IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBERT JAMES WALTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1277C |
| v. | ) | |
| | ) | Judge Margaret M. Sweeney |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANT'S SUPPLEMENTAL MEMORANDUM REGARDING DEFENDANT'S CONSOLIDATED MOTION TO DISMISS OR FOR SUMMARY JUDGMENT, AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

ROBERT G. HILTON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 307-0346
Telefax: (202) 307-0345

OF COUNSEL:
GARY L. HAUSKEN
Attorney
Department of Justice

November 9, 2006

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

I. ARGUMENT ON LEGAL ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. THE EFFECT OF 17 U.S.C. § 105 ON FPI WORKERS IS IDENTICAL TO THE EFFECT OF 17 U.S.C. § 201(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. LEGISLATIVE HISTORIES OF TITLE 18 PROVISIONS DO NOT EXPRESS CONGRESSIONAL INTENT REGARDING COPYRIGHT OWNERSHIP BY FPI WORKERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

C. LEGISLATIVE HISTORY OF 18 U.S.C. § 3681 DOES NOT EXPRESS CONGRESSIONAL INTENT REGARDING COPYRIGHT OWNERSHIP BY FPI WORKERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

D. THE LANGUAGE, PURPOSE, AND LEGISLATIVE HISTORY OF THE PROVISO OF 28 U.S.C. § 1498(b) SHOW THAT *EMPLOYMENT* AND *SERVICE* ARE NOT COEXTENSIVE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1. Differences of Purpose and Effect Between Ownership and Shop Right . 7

2. Statutory Language Implies that *Service* Includes Activity Beyond the Scope of *Employment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3. Legislative History Also Demonstrates that *Service* Includes Activity Beyond *Employment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

4. Resort to Other Statutes Is Not Necessary to Construe the Meaning of *Service* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5. Uncontroverted Facts Mandate Dismissal Under the Proviso . . . . . . . . . 15

II. SUPPLEMENTAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

### CASES

*Community for Creative Non-Violence v. Reid*,
490 U.S. 730 (1989) .......... 4, 9, 16, 18, 19

*Coupar v. U.S. Dept. Of Labor*,
105 F.3d 1263 (9th Cir. 1997) .......... 4

*Crozier v. Fried. Krupp A.G.*,
224 U.S. 290 (1912) .......... 12

*Effects Associates, Inc. v. Cohen*,
908 F.2d 555 (9th Cir. 1990), *cert. denied sub nom.*, *Danforth v. Cohen*,
498 U.S. 1103 (1990) .......... 7, 9

*Harris v. Emus Records Corp.*,
734 F.2d 1329 (9th Cir. 1984) .......... 7, 9

*Herbert v. United States*,
36 Fed. Cl. 299 (1996) .......... 7, 9, 10, 11, 13, 14, 15, 16

*Lariscey v. United States*, 20 Cl. Ct. 385 (1990), *aff'd by an evenly divided court*, 981 F.2d
1244 (Fed. Cir. 1993) .......... 8

*McKenna v. Lee*,
318 F. Supp. 2d 296 (E.D. N.C. 2002), *aff'd*, 53 Fed. Appx. 268, 2002 WL
31845928 (4th Cir., Dec. 20, 2002) .......... 5

*Old Tyme Foods, Inc. v. Roundy's, Inc.*,
961 F.2d 200 (Fed. Cir. 1992) .......... 18

*Public Affairs Associates, Inc. v. Rickover*,
284 F.2d 262 (D.C. Cir. 1960), *vacated for lack of adequate record*, 369 U.S.
111, 113 (1962) .......... 3

*Scherr v. Universal Match Corp.*,
417 F.2d 497 (2d Cir 1969) .......... 11

*Scheuer v. Rhodes*,
416 U. S. 232 (1974) .......... 18

*Spectrum Intern. v. Stevilite Corp.*,
164 F.3d 1372 (Fed. Cir. 1998) ........ 16

*Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik AG*, 829 F.2d 1075 (Fed. Cir. 1987) ........ 7

*United States v. Dubilier Condenser Corp.*,
289 U.S. 178 (1933), *amended*, 289 U.S. 706 (1933) ........ 7, 8, 9, 10, 11, 12, 13

*United States v. Hartwell*,
73 U.S. 385 (1868) ........ 9, 14

*United States v. Nordic Village, Inc.*,
503 U.S. 30 (1992) ........ 10

*United States v. Walton*,
42 F.3d 1404 (Table), 1994 WL 650100 (9th Cir., Nov. 17, 1994) ........ 16, 17

*Walton v. Matthews*,
1992 WL 131861 (D. Kan., May 27, 1992) ........ 17

*Walton v. United States*,
833 F.2d 1018 (Table, 9th Cir. 1987), *appeal on remand*, 894 F. 2d 84 (Table), 1989 WL 150625 (9th Cir., Dec. 13, 1989) ........ 16, 17

*Walton v. United States Marshals Service*,
1998 WL 220460 (D. Kan., April 8, 1998), *aff'd*, 161 F.3d 19 (10th Cir., 1998) ........ 9, 11, 17

*William "Sky" King v. St. Vincent's Hospital*,
502 U.S. 215 (1991) ........ 9, 14

## STATUTES

17 U.S.C. § 101 ........ 2, 3, 7, 9, 10

17 U.S.C. § 102 ........ 2

17 U.S.C. § 105 ........ 1, 2, 4

17 U.S.C. § 106 ........ 7

17 U.S.C. § 201(b) ........ 2, 3, 9, 10

18 U.S.C. §3681 .......... 1, 5

18 U.S.C. §§ 4121, et. seq .......... 5

18 U.S.C. §§ 4121(b)(1) .......... 5

18 U.S.C. §§ 4122 .......... 5

28 U.S.C. § 1498(a) .......... 6, 11, 14

28 U.S.C. § 1498(b) .......... 1, 3, 4, 6, 9, 10, 11, 13, 14, 16, 17, 19

Copyright Act of 1909, Pub. L. No. 60-349 § 7, 35 Stat. 1075, 1077 (1909) .......... 3

Pub. L. No. 61-305 (1910), 36 Stat. 851 (1910) .......... 11, 12

Pub. L. No. 82-582 (1952), 66 Stat. 757 (1952), 28 U.S.C. § 1498 (1952) .......... 12, 13

Pub. L. No. 86-726, § 1(b) (1960), 74 Stat. 855 (1960) .......... 13

Copyright Act of 1976, Pub. L. No. 94-553, 90 Stat. 2541 (1978) .......... 3

Crime Control Act of 1990, Pub. L. No. 101-647 § 2905(a), 104 Stat. 4914 (1991) .......... 4

Fed. R. Evid. 609(a)(2) .......... 16

## OTHER

H.R. Rep. No. 1288 (May 7, 1910), *reprinted in* 1960 United States Congressional Serial Set, Volume 5593 .......... 12, 13

H.R. Rep. No. 1726 (April 7, 1952), *reprinted in* 1952 U.S.C.C.A.N. 2322 .......... 13

S. Rep. No. 1877 (Aug. 22, 1960), *reprinted in* 1960 U.S.C.C.A.N. 3444 (quoting H.R. Rep. No. 624, July 1, 1960) .......... 13, 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBERT JAMES WALTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1277C |
| v. | ) | |
| | ) | Judge Margaret M. Sweeney |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL MEMORANDUM REGARDING DEFENDANT'S CONSOLIDATED MOTION TO DISMISS OR FOR SUMMARY JUDGMENT, AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

In response to the court's Order of August 2, 2006, Defendant hereby submits this supplemental memorandum. In its Order, the court requested briefing on the following:

> Whether 17 U.S.C. § 105 ... renders ineffective the copyright issued to plaintiff for the artwork he created during his incarceration;
>
> Whether the legislative history of (1) the Crime Control Act of 1990, (2) the statute creating Federal Prison Industries, or (3) any other relevant or comparable statute expresses Congressional intent regarding inmates' ability to own or copyright material created under the auspices of Federal Prison Industries;
>
> Whether the legislative history of the federal "Son of Sam" statute, 18 U.S.C. § 3681, or any other relevant or comparable statute expresses Congressional intent regarding inmates' ability to receive compensation or receive profit from their labor during their imprisonment beyond wages paid by Federal Prison Industries;
>
> Whether 28 U.S.C. § 1498(b) distinguishes between "employment" of the United States and "service" of the United States and, if so, whether it is relevant to this case.

In addition, the court requested that Plaintiff furnish supplemental facts relating to which portions of the Plaintiff's college and postgraduate education were received while he was an

inmate; whether the United States provided Plaintiff with the clip art, training, education, tools, computer equipment, computer programs, and instructions used in creating the images for the accused calendar; and whether the Plaintiff modified the clip art in any way before he placed it on the calendar.

## I. ARGUMENT ON LEGAL ISSUES

### A. THE EFFECT OF 17 U.S.C. § 105 ON FPI WORKERS IS IDENTICAL TO THE EFFECT OF 17 U.S.C. § 201(b)

Defendant agrees with the conclusion in Plaintiff's Supplemental Memorandum, dated September 29, 2006, at page 3, that the same 13-factor analysis set forth in the parties' cross motions for summary judgment applies equally to 17 U.S.C. § 105 and 17 U.S.C. § 201(b). However, Defendant disagrees with Plaintiff's application of the 13-factor test and Plaintiff's conclusion as to ownership and existence of any copyright.[1]

As submitted in Defendant's Consolidated Motion, dated January 14, 2005, at pages 15-16, a "work of the United States Government" is a work prepared by an officer or employee of the United States Government as part of that person's official duties. 17 U.S.C. § 101. Copyright protection is not available for a work of the United States Government under Section 105. And,

[1] We also note that while a copyright registration has been issued, copyright protection is not created by the registration, but rather, subsists if copyrightable subject matter is fixed in a tangible medium. 17 U.S.C. § 102. While the copyright registration application identified Mr. Walton as "Robert James Walton (Reg No 18486-008), FCI Florence, 5580 Highway 67 South, Florence CO 81226," and while the calendar submitted to the Copyright Office states that the copies were made by "Federal Prison Industries, Inc.," there is no indication that the Copyright Office was aware that Mr. Walton was a prisoner, that he was working for Federal Prison Industries at the time that the accused calendars were created, or that "FCI" in his address means "Federal Correctional Institute."

Defendant agrees with Plaintiff that the Section 105 inquiry collapses into an analysis of whether Plaintiff, as an FPI worker, was an employee of the United States. Defendant also agrees with Plaintiff that the inquiry into whether the accused work is a work for hire under 17 U.S.C. §§ 101, 201(b) collapses into the same analysis of whether Plaintiff, as an FPI worker, was an employee of the United States. The only difference between Section 201(b) and Section 105 is the result of the analyses: Section 201 determines who owns the resulting copyright; whereas, Section 105 determines whether any copyright exists.[2] Under either analysis, whether the Plaintiff in the present case owns a copyright is contingent upon whether he was an "employee,"

---

[2] There is an anomaly between Section 105 (no copyright in works made by officers and employees in the course of their official duties) and Section 1498(b) (barring suit by copyright owners whose works were prepared by a Government employee as part of the employee's official functions). This anomaly is an historical artifact. When Section 1498(b) was enacted, the Copyright Act of 1909, Pub. L. No. 60-349 § 7, 35 Stat. 1075, 1077 (1909) was in effect. That act provided, in pertinent part, that no copyright subsisted "in any *publication* of the United States." *Id.* (emphasis added) Thus, at the time, copyright could exist in any work prepared by a Government employee, unless the work was published by the Government. Thus, Government employees could obtain and retain copyright in any works not published under the auspices of the Public Printer (i.e., the Government Printing Office). *See, Public Affairs Associates, Inc. v. Rickover*, 284 F.2d 262, 268-69 (D.C. Cir. 1960), *vacated for lack of adequate record*, 369 U.S. 111, 113 (1962).

The present section 105 was enacted as part of the Copyright Act of 1976, Pub. L. No. 94-553, 90 Stat. 2541, 2546 (1978). The substitution of "work of the United States Government" for "publication of the United States" resulted in Section 105 encompassing all works of Government employees created as part of their official functions. Section 1498(b) has not been amended to conform. Thus, while Section 1498(b) bars suit for use of works prepared as part of the official functions of a Government employee, under Section 105, no copyright exists in such works.

As a result, the proviso of Section 1498(b) now bars claims only for works created by Government employees or those in service of the United States who use Government time, material, or facilities in the preparation of the work.

as defined in *Community for Creative Non-Violence v. Reid* (*CCNV*), 490 U.S. 730, 751-52 (1989).

For the reasons submitted in its previous filings, Defendant disagrees with Plaintiff's implicit assumptions that Plaintiff was not an employee when he prepared the accused work and that 17 U.S.C. § 105 does not bar a copyright for the accused works. Plt. Sup. Mem. at pages 2-4. Furthermore, in Plaintiff's Supplemental Memorandum at pages 3-4, Plaintiff reiterates the same arguments previously set forth in Plaintiff's Cross Motion, dated April 29, 2005, at pages 9-13. In that prior submission, Plaintiff argues that the court should look to non-copyright statutes, particularly the Fair Labor Standards Act, as construed by *Coupar v. U.S. Dept. Of Labor*, 105 F.3d 1263, 1266-67 (9th Cir. 1997) to determine the meaning of *employee*. Defendant has already submitted reasons why this approach is in error in Defendant's Opposition to Plaintiff's Cross Motion, dated June 20, 2005, at pages 6-8. Indeed, *Coupar*, 105 F.3d at 1266, n.2, itself states that "[t]he same term often has different meanings in different statutes," thus undermining Plaintiff's reliance on cases that construe different statutes.

B. LEGISLATIVE HISTORIES OF TITLE 18 PROVISIONS DO NOT EXPRESS CONGRESSIONAL INTENT REGARDING COPYRIGHT OWNERSHIP BY FPI WORKERS

With the exception of 28 U.S.C. § 1498(b), discussed below, Defendant has found no statute, the legislative history of which expresses a Congressional intent regarding the ability of prisoners to own copyrights in works created while working for FPI.

The Crime Control Act of 1990, Pub. L. No. 101-647 § 2905(a), 104 Stat. 4914 (1991), requires federal inmates to work. Neither that statute nor its legislative history expresses a

Congressional intent as to copyright ownership by prisoners. However, as previously discussed in Defendant's Opposition to Plaintiff's Cross Motion, at pages 8-9, this statute favors finding that no copyright exists or that Plaintiff would not own any copyright that might exist. The rehabilitation function of prison labor is best served by inmates' functioning as though they were employees for an ordinary business. *McKenna v. Lee*, 318 F. Supp. 2d 296, 299-300 (E.D. N.C. 2002), *aff'd*, 53 Fed. Appx. 268, 2002 WL 31845928 (4th Cir., Dec. 20, 2002).

Defendant agrees that the history of the statutes which establish FPI , 18 U.S.C. §§ 4121, et. seq., does not express a Congressional intent regarding the ability of prisoners to own copyrights in works created while working for FPI. As discussed in Defendant's Consolidated Motion, at pages 5 and 27, the statutes which establish FPI, 18 U.S.C. §§ 4121(b)(1), 4122, support the conclusion that no copyright exists or that Plaintiff would not own any copyright that might exist in the works. The main purpose of the FPI program, as provided in the statute, is to create the kind of workplace environment that one finds in employment outside of prison, and FPI performs ordinary management functions that one finds outside of a prison. Here again, the statute relating to FPI suggests that Plaintiff should be treated as an employee for purposes of copyright, with FPI functioning as employer.

C. LEGISLATIVE HISTORY OF 18 U.S.C. § 3681 DOES NOT EXPRESS CONGRESSIONAL INTENT REGARDING COPYRIGHT OWNERSHIP BY FPI WORKERS

Defendant also agrees with Plaintiff that the legislative history of 18 U.S.C. § 3681 does not express a Congressional intent regarding the ability of prisoners to own copyrights in works created while working for FPI. By its terms, the statute applies only to certain criminal

gatherings, to the delivery of defense information for the purpose of aiding foreign governments, and to certain crimes resulting in the physical harm to an individual. In addition, the statute further limits itself to proceeds from a contract relating to the depiction of the crime or to the convict's thoughts, opinions, or emotions regarding such crime. None of these limited circumstances applies to the present case. Defendant has found no comparable statute, the legislative history of which expresses a Congressional intent regarding the ability of prisoners to own copyrights in works created while working for FPI.

## D. THE LANGUAGE, PURPOSE, AND LEGISLATIVE HISTORY OF THE PROVISO OF 28 U.S.C. § 1498(b) SHOW THAT *EMPLOYMENT* AND *SERVICE* ARE NOT COEXTENSIVE

The proviso of 28 U.S.C. § 1498(b) at issue here reads:

> *Provided, however*, That this subsection shall not confer a right of action on any copyright owner or any assignee of such owner with respect to any copyrighted work prepared by a person while in the employment or service of the United States, where the copyrighted work was prepared as a part of the official functions of the employee, or in the preparation of which Government time, material, or facilities were used:

Contrary to the assertion in Plaintiff's Supplemental Memorandum at page 8, regarding the word "service" in this proviso, the language and history of the proviso show that it is derived nearly verbatim from a similar proviso in 28 U.S.C. § 1498(a), which grants the Government rights equivalent to a royalty-free license in inventions made by persons employed by or in the service of the United States. Those rights are similar to the "shop right" enjoyed by the employer at common law. Like the Section 1498(a) provision, the proviso at issue here creates a bar to suit by the copyright owner that is similar to the royalty-free non-exclusive license in patents arising

from the shop-right doctrine. As discussed below, the intended purpose of both the shop-right doctrine and the proviso is to preclude the copyright owner from being paid twice for the same work.

1. Differences of Purpose and Effect Between Ownership and Shop Right

The owner of the copyright is the person who may assert the exclusive rights set forth in 17 U.S.C. § 106. *Id.* A non-exclusive copyright license does not confer any ownership rights; a non-exclusive copyright license is an agreement by the owner not to sue the licensee for infringement. *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 559 (9th Cir. 1990), *cert. denied sub nom.*, *Danforth v. Cohen*, 498 U.S. 1103 (1990); *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1334 (9th Cir. 1984); *Herbert v. United States*, 36 Fed. Cl. 299, 304, n. 3 (1996). *See, also*, 17 U.S.C. § 101 (A "transfer of copyright ownership" is [a transfer] of any of the exclusive rights ..., but not including a nonexclusive license.). Similarly, a non-exclusive *patent* license does not confer an ownership right but, rather, is an agreement from the owner not to sue the licensee for infringement. *Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik AG*, 829 F.2d 1075, 1081 (Fed. Cir. 1987).

Under common law, the "shop right" exists

> where a servant, during his hours of employment, working with his master's materials and appliances, conceives and perfects an invention for which he obtains a patent, he must accord his master a nonexclusive right to practice the invention.

*United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 188 (1933), *amended*, 289 U.S. 706 (1933). The rationale for a royalty-free non-exclusive license under the shop-right doctrine is that the master should not have to pay twice to use the invention made using his own resources:

> [s]ince the servant uses his master's time, facilities, and materials to attain a concrete result, the latter is in equity entitled to use that which embodies his own property and to duplicate it as often as he may find occasion to employ similar appliances in his business.

*Dubilier Condenser*, 289 U.S. at 188-89. In *Dubilier Condenser*, 289 U.S. at 189-90, the Court held that certain Government employees were entitled to retain title to patents that related to their Government employment. The Court also held that the Government enjoyed the same "shop right" as enjoyed by a private employer. *Dubilier Condenser*, 289 U.S. at 192.

The physical act of using equipment in which the master made a substantial investment constitutes the consent to a shop right. *Lariscey v. United States*, 20 Cl. Ct. 385 (1990), *aff'd by an evenly divided court*, 981 F.2d 1244 (Fed. Cir. 1993). *Lariscey* was a trade secret case, rather than a copyright or patent case. Lariscey was a prisoner and an FPI worker who made a jig for cutting Kevlar used in making military helmets. That jig constituted the alleged trade secret. *Lariscey*, 20 Cl. Ct. at 386-87. At the time of creation, he stated that he intended to obtain a patent on his idea, and that he objected to its use by FPI. *Id.* The court held that the use of FPI's materials to build the prototype jig, and subsequent use of FPI funds to build a metal jig, created a shop right to FPI's benefit, regardless of Lariscey's verbal objection. *Id.* at 390-91.

A purpose of the proviso in Section 1498(b) is to provide the Government with the right to use copyrighted works that are created with the use of Government time, materials, or facilities in the same manner as the shop right which allows the Government to use patented inventions created by its employees with the use of Government time, materials, or facilities.

2. <u>Statutory Language Implies that *Service* Includes Activity Beyond the Scope of *Employment*</u>

There is no apparent reason to construe *a person while in the employment* under 28 U.S.C. § 1498(b) differently from *employee* in 17 U.S.C. § 101, inasmuch as both statutes relate to copyrights. However, Congress has not defined "service," as that word is used in Section 1498. The word "service" (or a word derived from *service*) also does not appear in the definition of "work made for hire" in 17 U.S.C. § 101 or in 17 U.S.C. § 201(b), and the meaning of the word *service* is not addressed in *CCNV*, 490 U.S. at 732, 740-41, 751-52.

The Supreme Court has observed that definitions of words in statutes are frequently informed by the context in which they are used. *United States v. Hartwell*, 73 U.S. 385, 396 (1868); *William "Sky" King v. St. Vincent's Hospital*, 502 U.S. 215, 221 (1991). The statutory language, legislative history, and other relevant context must be examined to determine the appropriate definition of *service* in 28 U.S.C. § 1498(b).

As stated above, the proviso in Section 1498(b) does not confer copyright ownership on the Government. Rather, the proviso creates a bar to suit that is similar to a shop right. *See*, *Dubilier Condenser Corp.*, 289 U.S. at 188; *Effects Associates*, 908 F.2d at 559; *Harris*, 734 F.2d at 1334; *Herbert*, 36 Fed. Cl. at 304, n. 3. Although the defense provided by the statutory proviso is not a "license" in a technical sense, the effect is still the same. *Herbert*, 36 Fed. Cl. at 304, n. 3.

Under the proviso in Section 1498(b), suit is precluded if the creator of the work was "in the employment *or* service of the United States" (emphasis added). This indicates that *service* and *employment* have different definitions. The proviso bars suits in cases where the worker

would retain ownership of the work subject to copyright protection, and, accordingly, is not an employee as contemplated by 17 U.S.C. §§ 101, 201(b) or § 105.

In *Herbert*, 36 Fed. Cl. at 306-07, the plaintiff was a Government employee who voluntarily served on a prestigious committee that was managed by a Government contractor. The plaintiff used Government facilities to do his volunteer committee work. The court observed that Dr. Herbert's copyright suit was barred not only because he was an employee, but also because of his service to the Government on the committee:

> [P]laintiff is further denied a right of action under 28 U.S.C. § 1498(b) because he produced manuscripts as part of his official *service* to the government as a member of the Kamin Committee.

*Herbert*, 36 Fed. Cl. at 306 (emphasis in original to distinguish *service* from *employment*). In *Herbert*, "service" was deemed to include work which is traditionally associated with that of an employee, but where no employment relationship exists.

If *employment* and *service* were given *identical* meanings, then *service* would be mere surplusage. Therefore, *service* must contemplate some form of work which is outside the scope of *employment*.

Plaintiff's Supplemental Memorandum at pages 8-9 suggests that the proviso is meaningless, redundantly barring a plaintiff only from suits in which the plaintiff is not the copyright owner. Such a suggestion, however, is contrary to the rules of statutory construction. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36 (1992) ("settled rule that statute must, if possible, be construed in such fashion that every word has some operative effect").

The statutory proviso bars suit where "in the preparation of [the work] Government time, material, or facilities were used." Applying the purpose of the statute, as observed by *Dubilier*

*Condenser*, 289 U.S. at 188-89 ("since the servant uses his master's time, facilities, and materials . . ."), the statutory language prevents suit by one who is working for the Government in a capacity similar to that of an employee, where the Government provides the time, material, or facilities to create the work, regardless of whether a traditional employment relationship has been established. That would include an inmate working for FPI, such as Plaintiff.

3. Legislative History Also Demonstrates that *Service* Includes Activity Beyond *Employment*

Plaintiff's Supplemental Memorandum at page 9 criticizes *Herbert* for failing to consider the legislative history of Section 1498(b). *Herbert*, 36 Fed. Cl. at 306 n. 4 construed the proviso of Section 1498(b) based on the near-identity of language between Sections 1498(a) and (b). However, contrary to Plaintiff's criticism, the legislative history confirms that *Herbert* correctly interprets "service" to include a relationship that is different from a traditional employment relationship.[3]

The shop-right doctrine had existed prior to the enactment of what is now codified at 28 U.S.C. § 1498. See, *Dubilier*, 289 U.S. at 189-90. The genesis of Section 1498 was Pub. L. No.

[3] Under the Copyright Act of 1909, now repealed, the Court of Appeals for the Second Circuit reached the same result by treating the work as "one made for hire." *Scherr v. Universal Match Corp.*, 417 F.2d 497, 501 (2d Cir 1969). In that case, two soldiers created a life-size statue of an infantryman, named "The Ultimate Weapon" in lieu of their regular duties. *Scherr*, 417 F.2d at 499. The court recognized that soldiers are not "employees" in the conventional sense. Nonetheless, the court concluded that soldiers could be treated as employees because the Army had the power to supervise the work, and due to the "absence of any concrete evidence of legislative intent to exclude from the coverage of [the 'work for hire' provision], any works created by military personnel while fulfilling their obligation to serve their country . . . ." *Scherr*, 417 F.2d at 501.

Similarly, the absence of clear legislative intent provides no reason for excluding prisoners, like Plaintiff, from being considered in the "service" of the United States.

61-305 (1910), 36 Stat. 851, 852 (1910). *See*, *Crozier v. Fried. Krupp A.G.*, 224 U.S. 290, 302 (1912); *Dubilier Condenser*, 289 U.S. at 204, n. 21. The 1910 statute covered patents, but not copyrights. The original proviso language read

> *And provided further*, That the benefits of this Act shall not inure to any patentee, who, when he makes such claim is in the employment or service of the Government of the United States; or the assignee of any such patentee; nor shall this Act apply to any device discovered or invented by such employee during the time of his employment or service.

36 Stat. 852. The reason for the proviso was that

> There are certain patents taken out by government officers or employees which are good and valid against all the world except the Government itself. ... The United States in such a case has an implied license to use the patent without compensation, for the reason that the inventor used the time or the money or the material of the United States in perfecting his invention.

H.R. Rep. No. 1288, 61st Cong., 2d Sess. at p. 3 (May 7, 1910), *reprinted in* United States Congressional Serial Set, Volume 5593; *see*, *Dubilier Condenser*, 289 U.S. at 205, n. 22.

The Supreme Court observed that Congress intended through this proviso to permit those in the "employment or service of the United States" to retain ownership of patents covering their inventions, with the United States retaining a shop right to use the invention as needed. *Dubilier Condenser*, 289 U.S. at 202-03.

The "Government time, materials or facilities" language was added to the proviso by Pub. L. No. 82-582 (July 17, 1952), 66 Stat. 757 (1952), 28 U.S.C. § 1498 (1952). The revised proviso language stated

> This section shall not confer a right of action on any patentee or any assignee of such patentee with respect to any invention discovered or invented by such person while in the employment or service of the United States, where the invention was related to the official functions of the employee, in cases in which such functions

> included research and development, or in the making of which Government time, materials or facilities were used.

66 Stat. 757. The reason for the addition was to prevent

> nuisance suits by Government employee-patentees, to test out the question whether or not the Government had a shop right, license, or right to title in the invention.

H.R. Rep. No. 1726 (April 7, 1952), *reprinted in* 1952 U.S.C.C.A.N. 2322, 2323.

The statute was extended to cover copyrights by Pub. L. No. 86-726, § 1(b) (Sept. 8, 1960), 74 Stat. 855 (1960), 28 U.S.C. § 1498(b) (1960). The statutory extension to cover copyrights

> is based, generally, upon provisions similar to those now existing in Federal law for patents .... .

S. Rep. No. 1877 (Aug. 22, 1960), *reprinted in* 1960 U.S.C.C.A.N. 3444, 3446 (quoting H.R. Rep. No. 624, July 1, 1960) ("Explanation of Bill"). Use of the same "or service" language in the corresponding proviso of Subsection 1498(b) further indicates that both provisos have the same purpose. *Herbert*, 36 Fed. Cl. at 306, n. 4 ("language of subsections (a) and (b) is nearly identical").

Both the language of the proviso of 28 U.S.C. § 1498 and the legislative history establish that the proviso is designed to protect the public fisc. Both the 1910 and 1952 legislative history disclose that the proviso is designed to bar a person who has used Government material or facilities to make an invention from subsequently suing the Government seeking compensation for the Government's use of the very thing that Government material or facilities were used to create. H.R. Rep. No. 1288, 61st Cong., 2d Sess. at p. 3; H.R. Rep. No. 1726 (April 7, 1952). *See*, *Dubilier Condenser*, 289 U.S. at 188-89.

The analysis of the legislative history in Plaintiff's Supplemental Memorandum at page 8 cites only a single item of legislative history, namely omission of the word *service* in a discussion in S. Rep. No. 1877 at 3-4, 1960 U.S.C.C.A.N. at 3446-47. That single instance of omission did not result in any statutory modification. The omission of the word *service* in the sentence found in S. Rep. No. 1877 at 3-4, 1960 U.S.C.C.A.N. at 3446-47 did not result in deletion of *service* when re-drafting the proviso of Section 1498(a) into Section 1498(b). The intent was to create a "provision[ ] similar to [that] now existing in Federal law for patents," and a proviso that contained identical "employment or service" language was enacted. 1960 U.S.C.C.A.N. at 3446. There is still no reason based on legislative history to conclude that the proviso of the copyright statute should be construed any differently from the nearly-identical proviso of the patent statute. *See*, *Herbert*, 36 Fed. Cl. at 306 n. 4. In light of the statutory language of Section 1498, as strongly corroborated by the legislative history, a person is in the service of the United States if he or she is working for the Government under conditions that do not amount to a traditional "employment" situation, but in the course of which Government time, material, or facilities are used.

4. <u>Resort to Other Statutes Is Not Necessary to Construe the Meaning of *Service*</u>

Because the construction of a statute depends primarily on its own language and history, *Hartwell*, 73 U.S. at 396; *William "Sky" King*, 502 U.S. at 221, and because the intended meaning and purpose of *service* is readily ascertainable from the language and history of Section 1498, resort to other statutes is unnecessary.

5. Uncontroverted Facts Mandate Dismissal Under the Proviso

In the present case, it is undisputed that Plaintiff used Government time, material, or facilities to prepare the accused works. Def. PFF[4] 19, 20; Plt. Resp. to Def. PFF[5] 19, 20. In Plaintiff's Declaration of October 5, 2006, filed on October 16, 2006 in response to the court's Order of August 2, 2006, Plaintiff identifies the following specific Government-supplied materials that he used to create the accused work: a design/layout software application (¶ 11), "fodder" images (¶ 12), a disk or CD containing various shapes (¶ 14.b), vector graphic-supporting software application (¶ 14.c), Adobe Photoshop (¶ 14.d and e, ¶ 17), Adobe PageMaker (¶ 14.f and g, ¶ 17), a zip-disk (¶ 14.f), a computer mouse and keyboard (¶ 17), and Adobe Illustrator (¶ 17).

Plaintiff, as a prisoner, is in no position to argue that the Government did not provide the facilities in which he created the accused work. In *Herbert*, 36 Fed. Cl. at 307,

> Plaintiff argued at trial that because nothing other than the walls, floor, and ceiling of his laboratory belonged to the government -- all of the equipment, etc., including that in his office, belonged to himself or Mt. Sinai -- government facilities were not used. This argument, however, is unpersuasive. The walls, floor, and ceiling of the laboratory are enough to qualify as government facilities.

The prison building alone in which Plaintiff in the present case worked when he created the allegedly copyrighted work is sufficient to satisfy the statutory condition of *Government time, material, or facilities*. *Id.* But Plaintiff in the present case also admits that he used other equipment in making the claimed works, including computers, materials, and other tools and instrumentalities. Def. PFF 19; Plt. Resp. to Def. PFF 19; Plt. Dec. ¶¶ 11-12, 14, 17.

---

[4] Defendant's Proposed Findings of Uncontroverted Fact, filed January 14, 2005.

[5] Plaintiff's Response to Defendant's Proposed Findings, filed April 29, 2005.

It is also undisputed that Plaintiff was serving the Government at the time he created the work, regardless of whether he was an employee, as defined by *CCNV*.

> FPI had the authority over the assignment of additional projects to Mr. Walton while he continued to work at the UNICOR Print Factory. Indeed, Mr. Walton admits that he designed and created other images and graphics, documents, signs, etc. for various federal agencies, as assigned by his FPI supervisors.
>
> . . . .
>
> For example, the work that Mr. Walton performed for FPI is part of FPI's regular business at the UNICOR Print Factory, which favors FPI's argument that it was Mr. Walton's employer.

Plt. Cross Mot. at p. 18. *See also*, Plt. Cross Mot. at p. 3; Plt. Resp. to Def. PFF 2; Plt. Dec. ¶¶ 13, 17.g.[6] Consequently, the Plaintiff is barred from suit. 28 U.S.C. § 1498(b); *Herbert*, 36 Fed. Cl. at 304.

## II. SUPPLEMENTAL FACTS

In response to the court's inquiry regarding the higher education obtained while Plaintiff was a prisoner, Defendant has appended Plaintiff's Inmate Education Data Transcript, a 3-page

---

[6] At the present time, cross motions are before the court. In considering Defendant's original motion, the court must adopt all reasonable factual inferences in Plaintiff's favor, and the court must disregard expected impeachment of Plaintiff's testimony under Fed. R. Evid. 609(a)(2) (conviction of multiple crimes involving dishonesty). *Spectrum Intern. v. Stevilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998) ; *see*, *Walton v. United States*, 833 F.2d 1018 (Table, 9th Cir. 1987), *appeal on remand*, 894 F. 2d 84 (Table), 1989 WL 150625 at *1 (9th Cir., Dec. 13, 1989); *United States v. Walton*, 42 F.3d 1404 (Table), 1994 WL 650100 at *1 (9th Cir., Nov. 17, 1994). Conversely, on Plaintiff's cross motion, the court must adopt all reasonable factual inferences in the Government's favor. With regard to *service* under the statutory proviso, Defendant's contentions of fact are set forth in Defendant's Proposed Findings of Uncontroverted Fact 2-18. Defendant expects to assert these facts, should trial be necessary. However, Defendant submits that it is entitled to summary judgment even on the facts as asserted by Plaintiff.

document that was served on Plaintiff's counsel on August 25, 2006. This appendix supplements the information submitted as Exhibit B of Plaintiff's Declaration.

In its order, the court inquired "which portions of the Plaintiff's college and postgraduate education were received while he was an inmate?" As set forth in Defendant's Consolidated Motion at page 4, Plaintiff was incarcerated from 1987 until August 16, 1991, and from 1994 until the present time. *Walton*, 894 F. 2d 84, 1989 WL 150625 at *1; *Walton v. Matthews*, 1992 WL 131861 at *1 (D. Kan., May 27, 1992); *Walton v. United States Marshals Service*, 1998 WL 220460 at *1 (D. Kan., April 8, 1998), *aff'd*, 161 F.3d 19 (10th Cir., 1998); *United States v. Walton*, 42 F.3d 1404, 1994 WL 650100 at *1.

Referring to Exhibit B of Plaintiff's Declaration (partial transcript), only the first half of the first column represents education *not* received while an inmate. As is set forth in that initial portion of Exhibit B, those early courses were taken at Maricopa Technical College and Arapahoe Community College before 1987. As may be seen from the dates, the remainder of the courses reflected on Exhibit B, as well as the degree conferred, occurred while Plaintiff was an inmate. In addition, the Inmate Education Data Transcript, appended hereto, discloses further education that is not listed in Exhibit B. All of that further education occurred while Plaintiff was an inmate.

Thus, the education referred to in Plaintiff's Declaration at Paragraphs 3, 5, and 8, and the certificates appended as Plaintiff's Exhibits A, C, D, and E were received while Plaintiff was an inmate. The education referred to in Paragraph 4 was *not* received while Plaintiff was an inmate.

For purposes of determining whether the proviso of 28 U.S.C. § 1498(b) applies to this case, Defendant submits that Plaintiff's education is not determinative. For purposes of applying

the 13-factor test to determine copyright ownership, Plaintiff's education could affect only *CCNV* Factor No. 2 (skill required). However, for purposes of the motion, the Defendant has previously assumed that Factor 2 generally favors Plaintiff.[7] Thus, these additional facts regarding Plaintiff's education level do not affect the *CCNV* calculus. Def. Resp. to Plt. PFF 3;[8] Def. Opp. to Plt. Cross Motion at p. 12.

As for Paragraph 5 of Plaintiff's declaration (graduation speech), in this case, its substance can affect only credibility, and credibility of evidence is not evaluated in a summary judgment motion. RCFC 56(c).

In response to the court's inquiry regarding materials furnished by Defendant, Defendant notes that it has already been established as an uncontroverted fact that

> All of the tools and other instrumentalities required to perform the work associated with the print factory are owned and provided by FPI. Inmates are not permitted to supply their own tools, equipment and materials. Inmates are not permitted to remove the tools, equipment or materials from the factory or to have access to them during their non-working hours. Within the print factory, all work is performed on the computers owned and maintained by FPI. Under no circumstances are inmates permitted to remove any of these computers or media, such as floppy disks, from the print factory.

Def. PFF 19; Plt. Resp. to Def. PFF 19. Plaintiff was precluded from furnishing any materials; all materials were furnished by Defendant. The identification of specific government-furnished

---

[7] As stated in Defendant's Consolidated motion at page 23, note 7, this concession is for purposes of this motion only, without prejudice to defendant, should the motion be denied. *See*, *Scheuer v. Rhodes*, 416 U. S. 232, 236 (1974); *Old Tyme Foods, Inc. v. Roundy's, Inc.*, 961 F.2d 200, 202 (Fed. Cir. 1992). (non-movants need only raise reasonable inference) Specifically, defendant notes a genuine issue of material fact that no qualification is actually "required" for Pre-Press work, as set forth in the second sentence of PFF 6. Persons with computer experience are only given "priority," as noted in PFF 8. Thus, this factor favors Mr. Walton only in this motion.

[8] Defendant's Response to Plaintiff's Proposed Findings, filed June 20, 2005.

materials in Plaintiff's Declaration, at Paras. 11-12, 14 and 17, is entirely consistent with this undisputed fact, and *CCNV* Factor 3 remains favorable to the Defendant. Defendant submits that the remaining information submitted in Plaintiff's Declaration does not materially affect the determination of whether the proviso of 28 U.S.C. § 1498(b) applies to this case, and, furthermore, none of the remaining 12 ownership-determination factors (other than Factor 3, which still favors Defendant) is materially affected by this information. Plaintiff was both an employee of, and in the service of, the Defendant when the accused work was created.

## III. CONCLUSION

For the foregoing reasons and for the reasons set forth in the original motion and opposition to the cross motion, the Defendant respectfully requests that the present action be dismissed or, in the alternative, that Defendant's motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JOHN FARGO
Director

s/ Robert G. Hilton
ROBERT G. HILTON
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530
Telephone: (202) 307-0346
Telefax: (202) 307-0345

OF COUNSEL:
GARY L. HAUSKEN
Assistant Director
Department of Justice

November 9, 2006

# APPENDIX

BOPUH * INMATE EDUCATION DATA * 08-21-2006
PAGE 001 * TRANSCRIPT * 13:05:19

REGISTER NO: 18486-008 NAME..: WALTON FUNC: DIS
FORMAT.....: TRANSCRIPT RSP OF: FLF-FLORENCE FCI

---------------------------- EDUCATION INFORMATION ----------------------------

| FACL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|---|---|---|---|---|
| FLF | ESL HAS | ENGLISH PROFICIENT | 02-04-1994 0904 | CURRENT |
| FLF | GED HAS | COMPLETED GED OR HS DIPLOMA | 06-01-1991 0712 | CURRENT |

------------------------------ EDUCATION COURSES ------------------------------

| SUB-FACL | DESCRIPTION | START DATE | STOP DATE | EVNT | AC | LV | HRS |
|---|---|---|---|---|---|---|---|
| FLF | MUSIC THEORY W 7:00-8:00 PM | 04-07-2006 | CURRENT | | | | |
| FLF | BEGINNING PAINTING 8-10 AM | 08-03-2006 | CURRENT | | | | |
| FLF | REC-LEISURE BEG GUITAR W 6-8PM | 04-07-2006 | 06-16-2006 | P | C | P | 20 |
| FTW MED | ADVANCED GUITAR CLASS | 03-27-2003 | 04-21-2003 | P | W | V | 0 |
| TCN | SPANISH | 01-11-1994 | 05-16-1994 | P | C | P | 45 |
| LVN | STATE AND LOCAL GOVERNMENT R | 08-30-1990 | 07-24-1991 | P | C | P | 45 |
| LVN | ALGEBRA AND TRIGONOMETRY | 08-29-1990 | 07-24-1991 | P | C | P | 45 |
| LVN | WRITERS WORKSHOP I | 08-31-1990 | 07-24-1991 | P | C | P | 45 |
| LVN | PRINCIPLES OF MANAGEMENT | 01-30-1991 | 07-24-1991 | P | C | P | 45 |

G0002 MORE PAGES TO FOLLOW . . .

REGISTER NO: 18486-008 NAME..: WALTON FUNC: DIS
FORMAT.....: TRANSCRIPT RSP OF: FLF-FLORENCE FCI

------------------------------ EDUCATION COURSES ------------------------------

| SUB-FACL | DESCRIPTION | START DATE | STOP DATE | EVNT | AC | LV | HRS |
|---|---|---|---|---|---|---|---|
| LVN | MARKETING PRINCIPLES | 01-30-1991 | 07-24-1991 | P | C | P | 45 |
| LVN | CAREER COUNSELING ASSESSMENT | 01-28-1991 | 07-22-1991 | P | C | P | 4 |
| LVN | BLDG MAINT INDEPENDENT STUDY | 08-08-1989 | 07-01-1991 | P | W | V | 100 |
| LVN | PRE-RELEASE CLASS INSIDE | 01-22-1991 | 02-07-1991 | P | C | P | 12 |
| LVN | MYTHOLOGY | 06-01-1990 | 08-13-1990 | P | C | P | 45 |
| LVN | DEATH AND DYING | 06-01-1990 | 08-13-1990 | P | C | P | 45 |
| LVN | HISTORY OF THE BLACK CHURCH | 06-08-1990 | 08-13-1990 | P | C | P | 45 |
| LVN | COLLEGE INDEP.STUDY SOCIOLOGY | 06-01-1990 | 08-13-1990 | P | C | P | 45 |
| LVN | MAJOR BRITISH WRITERS I | 01-15-1990 | 05-14-1990 | P | C | P | 235 |
| LVN | BUSINESS POLICY | 01-15-1990 | 05-14-1990 | P | C | P | 235 |
| LVN | PERSONNEL ADMINISTRATION | 01-15-1990 | 05-14-1990 | P | C | P | 235 |
| LVN | PRINCIPLES OF ACCOUNTING II | 01-15-1990 | 05-14-1990 | P | C | P | 235 |
| LVN | PRINCIPLES OF ECONOMICS: MICRO | 04-23-1990 | 05-14-1990 | P | C | P | 235 |
| LVN | COLLEGE CLASS | 11-02-1989 | 01-05-1990 | P | W | V | 40 |

G0002 MORE PAGES TO FOLLOW . . .

BOPUH * INMATE EDUCATION DATA * 08-21-2006
PAGE 003 OF 003 * TRANSCRIPT * 13:05:19

REGISTER NO: 18486-008 NAME..: WALTON FUNC: DIS
FORMAT.....: TRANSCRIPT RSP OF: FLF-FLORENCE FCI

------------------------------ EDUCATION COURSES ------------------------------

| SUB-FACL | DESCRIPTION | START DATE | STOP DATE | EVNT | AC | LV | HRS |
|---|---|---|---|---|---|---|---|
| LVN | COLLEGE CLASS | 11-02-1989 | 01-05-1990 | P | W | V | 40 |
| LVN | COLLEGE CLASS | 11-02-1989 | 01-05-1990 | P | W | V | 40 |
| LVN | COLLEGE CLASS | 11-02-1989 | 01-03-1990 | P | C | P | 40 |
| LVN | DESKTOP PUBLISHING 12:00-3:30P | 09-05-1989 | 12-21-1989 | P | C | M | 240 |
| LVN | PSE6-8:30 | 08-22-1989 | 11-20-1989 | P | W | I | 0 |
| LVN | BLDG MAINT M-TH 2-4 | 07-26-1989 | 08-08-1989 | P | W | I | 0 |
| LVN | DESKTOP PUBLISHING 12:00-3:30P | 06-15-1989 | 08-07-1989 | P | C | M | 120 |
| LVN | PSE6-8:30 | 01-27-1989 | 05-26-1989 | P | C | P | 135 |
| LVN | DESKTOP PUBLISHING 12:00-3:30P | 04-12-1989 | 05-15-1989 | P | C | E | 316 |
| LVN | DESKTOP PUBLISHING 12:00-3:30P | 01-23-1989 | 03-12-1989 | P | W | I | 0 |
| LVN | PSE6-8:30 | 09-21-1988 | 01-19-1989 | P | C | P | 225 |
| LVN | PRE-INDUSTRIAL PRINT | 01-09-1989 | 01-10-1989 | P | W | V | 0 |
| LVN | PSE6-8:30 | 06-16-1988 | 07-26-1988 | P | W | I | 30 |
| LVN | ABE2-4:00 | 06-01-1988 | 06-03-1988 | P | W | V | 2 |

G0005 TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED