# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 04-1277C

Judge Margaret M. Sweeney

ROBERT JAMES WALTON,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## PLAINTIFF'S REPLY TO DEFENDANT'S SUPPLEMENTAL MEMORANDUM REGARDING DEFENDANT'S CONSOLIDATED MOTION TO DISMISS OR FOR SUMMARY JUDGMENT, AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Christopher N. Sipes
Sarah L. Wilson
Scott C. Weidenfeller
COVINGTON & BURLING
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2401
(202) 662-6000 (telephone)
(202) 662-6291 (facsimile)
Attorneys for Plaintiff

# TABLE OF CONTENTS

Page

I. ARGUMENT ........................................................ 2

A. 28 U.S.C. § 1498(b) Does Not Distinguish Between "Employment" Of The United States And "Service" Of The United States. ........................................ 2

1. The Statutory Language And History Demonstrate The Absence Of A Distinction. ........................................ 3

2. Legislative History Confirms The Absence Of A Distinction. ........................................ 7

3. The Case Law Does Not Support A Distinction. ........................................ 7

4. The Government Impermissibly Seeks To Expand The Scope Of 28 U.S.C. § 1498(b). ........................................ 9

B. The United States Is Not Entitled To A "Shop Right" In Mr. Walton's Copyrighted Work. ........................................ 10

II. CONCLUSION ........................................................ 15

# TABLE OF AUTHORITIES

Page

## FEDERAL CONSTITUTION

U.S. Const. art. I, § 8, cl. 8 ........ 12

## FEDERAL STATUTES

5 U.S.C. § 5535 ........ 6

15 U.S.C. § 3710a(b)(3)(C) ........ 6

17 U.S.C. § 101 ........ 5

17 U.S.C. § 105 ........ 1, 5

17 U.S.C. § 201(b) ........ 1, 12

17 U.S.C. § 301 ........ 11, 13

17 U.S.C. §§ 501-513 ........ 3

28 U.S.C. § 1498 ........ *passim*

Act of June 25, 1910, ch. 423, 36 Stat. 851 (1910) ........ 6

## FEDERAL CASES

*Avtec Systems, Inc. v. Peiffer*, 21 F.3d 568 (4th Cir. 1994) ........ 11, 12

*Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471 (2d Cir. 2004) ........ 11

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ........ 13

*Eldred v. Ashcroft*, 537 U.S. 186 (2003) ........ 12

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246 (2004) ........ 5

*Garcia v. United States*, 469 U.S. 70 (1984) ........ 12

*Herbert v. United States*, 36 Fed. Cl. 299 (1996) ........ 8

*Lariscey v. United States*, 20 Cl. Ct. 385 (1990), *aff'd by an evenly divided court*, 981 F.2d 1244 (Fed. Cir. 1993) ........ 11

Page

**FEDERAL CASES (CONTINUED)**

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985) ....................5

*Scherr v. Universal Match Corp.*, 417 F.2d 497 (2d Cir. 1969) ....................8

*United States v. Dubilier Condenser Corp.*, 289 U.S. 178 (1933) ....................7, 11, 14

**RULES**

RCFC 7(b) ....................10

RCFC 12(b)(6) ....................10

RCFC 12(g) ....................10

RCFC 12(h)(2) ....................10

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 86-624 (1959) ....................7

H.R. Rep. No. 94-1476 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659 ....................12, 13

Hr'g on H.R. 4059, Subcomm. on Patents, Trademarks, and Copyrights of the S. Comm. on the Judiciary (June 2, 1960) ....................7

S. Rep. No. 86-1877 (1960) ....................7

**MISCELLANEOUS**

1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 5.03[C] (2006) ....................11

1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 5.13 n.12 (2006) ....................5

8 Donald S. Chisum, *Chisum on Patents*, § 22.03[3][a] (2006) ....................13

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROBERT JAMES WALTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1277C |
| v. | ) | |
| | ) | Judge Margaret M. Sweeney |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S SUPPLEMENTAL MEMORANDUM REGARDING DEFENDANT'S CONSOLIDATED MOTION TO DISMISS OR FOR SUMMARY JUDGMENT, AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

The parties' supplemental briefing reveals substantial agreement on all but one of the issues raised in the Court's August 2, 2006 Order ("Order"). Specifically, the parties agree that the same agency law analysis applies to the issues of whether Mr. Walton's work was a "work of the United States Government" pursuant to 17 U.S.C. § 105 and a "work made for hire" pursuant to 17 U.S.C. § 201(b), although they dispute the application of that analysis to this case. *See* Def.'s Supp. Mem. at 2. The parties also were unable to discern congressional intent, as expressed through statutory language or legislative history, regarding prisoners' ability to own copyrights in works they create while engaged in Federal Prison Industries ("FPI") activities, *see id.* at 4-6, with the exception of 28 U.S.C. § 1498(b), *see id.* at 4. Finally, any disputes regarding the facts set forth in Mr. Walton's Declaration regarding his education, the process by which he created his copyrighted artwork, and FPI's provision of computer equipment and programs used to create his copyrighted artwork are not material to the issue of copyright ownership, *see id.* at 18. Accordingly, Mr. Walton's Supplemental Reply addresses only the final issue raised in the

Court's Order, and discussed in Section I.D of the government's supplemental memorandum: "Whether 28 U.S.C. § 1498(b) distinguishes between 'employment' of the United States and 'service' of the United States and, if so, whether it is relevant to this case." Order at 2.

## I. ARGUMENT

The statutory language, purpose and history of 28 U.S.C. § 1498(b) demonstrates that "employment" and "service" are coextensive. The government's argument that Congress used two distinguishable terms to preclude nonemployees – including prisoners – from bringing infringement suits against the United States is unsupported by Supreme Court, Federal Circuit, or Court of Federal Claims decisional law, and it is inconsistent with Congress's use of the terms "employment" and "service" in substantive copyright statutes. Moreover, the government's belated suggestion that it is entitled to a "shop right" to use Mr. Walton's copyright, *see* Def.'s Supp. Mem. at 7-8, and that its "shop right" precludes Mr. Walton's cause of action, *see id.* at 15-16, is improper and unfounded. Congress explicitly rejected the application of the shop right doctrine to copyright law; consequently, this Court should rebuff the government's eleventh-hour reliance on the common law shop right doctrine as a ground for dismissal and proceed to the merits of his claim.

### A. 28 U.S.C. § 1498(b) Does Not Distinguish Between "Employment" Of The United States And "Service" Of The United States.

Section 1498(b) does not draw a material distinction, if it draws any distinction at all, between persons "in the employment . . . of the United States" and those "in the . . . service of the United States." 28 U.S.C. § 1498(b) (2000). Instead, the statutory text, legislative history, and case law make clear that persons "in the . . . service of the United States," like persons "in

the employment . . . of the United States," are government employees. Even if Congress intended through the language of Section 1498(b) to extend its bar against infringement suits from "ordinary" government employees "in the employment . . . of the United States" to, for example, civilian or military officers "in the . . . service of the United States," the distinction between employment and service, or employees and servants, is immaterial to this case because Mr. Walton was not a government employee or servant of any kind at the time he created the calendar artwork at issue. Simply put, Mr. Walton was neither "in the employment" nor "in the . . . service" of the United States, and thus is entitled, as the registered owner of a copyright in his artwork, to pursue this copyright action against the United States.[1]

### 1. The Statutory Language And History Demonstrate The Absence Of A Distinction.

To bolster its argument that Congress created two different categories of "workers" precluded from suing the government for copyright infringement, the government focuses solely on the employment or service exception to the general rule that government employees, except in certain circumstances, may sue for copyright infringement in the United States Court of Federal Claims. But the copyright laws provide broad rights and remedies for copyright infringement, *see generally* 17 U.S.C. §§ 501-513 (2000), and Section 1498(b) provides broadly that copyright owners may bring infringement actions against the United States in this Court, *see* 28 U.S.C. § 1498(b) (providing that "the exclusive action which may be

---

[1] The government's spurious suggestion that the Copyright Office might not have recognized that Mr. Walton was a prisoner, and that, if it had, it might have refused to register his copyright has no bearing on the significant legal issues raised by this lawsuit.

brought for [copyright] infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims").

The plain language of the copyright infringement provision of Section 1498 expressly allows government employees to sue for infringement of their copyrights, except in two circumstances. *See* 28 U.S.C. § 1498(b) (providing that "a Government employee shall have a right of action against the Government under this subsection except [1] where he was in a position to order, influence, or induce use of the copyrighted work by the Government" or [2], for "any copyrighted work prepared by a person while in the employment or service of the United States, where the copyrighted work was prepared as a part of the official functions of the employee, or in the preparation of which Government time, material, or facilities were used").

The language of Section 1498(b) demonstrates that Congress's reference to "person[s] . . . in the employment or service of the United States" does not distinguish between those in the employment of the government and those in the service of the government. Immediately after defining the pertinent class of persons as those "*in the employment or service* of the United States," the statute provides that, among other things, no cause of action shall lie "where the copyrighted work was prepared as a part of the official functions of *the employee*." *Id.* (emphases added). If, as the government suggests, Congress intended to distinguish between government employees and servants, it would not have neglected to include the distinction in the next clause. Furthermore, the interchangeability of "employee" and someone "in the service of" is reflected in the dictionary definition of "service" as "[e]mployment in duties or work for

another, especially for a government (public service)." *Webster's II New College Dictionary* 1010 (3d ed. 2001).[2]

Congress's use of the disjunctive construction in Section 1498(b) to refer to different types of government employees is fully consistent with its choice of language in other areas of copyright law. For example, "[c]opyright protection . . . is not available for any work of the United States Government," which is defined as "a work prepared by an *officer or employee* of the United States Government as part of that person's official duties." *See* 17 U.S.C. §§ 101, 105 (2000) (emphasis added). Despite the disjunctive construction, it is well-settled that "[a]n 'officer' of the United States Government is equated with an 'employee' for this purpose." *See* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* ("*Nimmer*") § 5.13 n.12 (2006).

The government also points to the similarity of the language in Sections 1498(a) and (b) as a basis for arguing that Congress *must have* intended to capture some class of non-employees by using "in the . . . service of," *see* Def.'s Supp. Mem. at 6, 11, 13, 14. However, Section 1498(a), like Section 1498(b), reflects the coextensive nature of the persons "in the employment or service of the United States" by providing immediately thereafter that no cause of action shall lie where "the invention was related to the official functions of *the employee*." 28 U.S.C. § 1498(a) (emphasis added).

Moreover, the predecessor to what is now codified at 28 U.S.C. § 1498(a) demonstrates that Congress intended interchangeability when it referred to persons "in the

---

[2] "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)). Courts should look to dictionary definitions to determine that ordinary meaning. *See id.* at 252-53.

employment or service of the United States." The predecessor of Section 1498(b) provided that "the benefits of this Act shall not inure to any patentee, who . . . is in the *employment or service* of the Government of the United States . . . nor shall this Act apply to any device discovered . . . *by such employee* during the time of his *employment or service*." Act of June 25, 1910, ch. 423, 36 Stat. 851, 852 (1910) (emphasis added). Congress thus made clear that, in this context, "service" is performed by government *employees*.

The government's argument is also contradicted by the usage and plain meaning of persons "in the . . . service of the Government" in other parts of the United States Code. For example, Congress provided that government laboratories may "permit an employee or former employee of the laboratory to participate in an effort to commercialize an invention made by the employee or former employee while *in the employment or service of the Government*." 15 U.S.C. § 3710a(b)(3)(C) (emphasis added). That language is virtually identical to the language in 28 U.S.C. § 1498, and Congress here makes clear that a person "in the employment or service of the [United States] Government" is a government employee. *See id*. Similarly, 5 U.S.C. § 5535 provides that a government "employee" may not receive certain additional pay or allowances, and the legislative history makes clear that "[t]he word 'employee' is coextensive with and substituted for . . . 'person employed *in the service of the United States*.'" *See* 5 U.S.C.A. § 5535 (Historical And Statutory Notes) (emphasis added). In sum, the plain text and meaning of Section 1498(b), as well as other portions of the United States Code, makes clear that references to those "in the service of the United States" or those "in the service of the government" constitute references to government employees.

**2. Legislative History Confirms The Absence Of A Distinction.**

As discussed in Plaintiff's Supplemental Brief, the legislative history of Section 1498(b) speaks exclusively in terms of government employees. The government mischaracterizes the legislative record as containing only a "single instance of omission" of the word "service" when both the House and Senate Reports refer to "employment of the United States." Def's Supp. Mem. at 14. Furthermore, the legislative history is utterly devoid of any suggestion that Congress intended to capture a class of non-employees within the scope of Section 1498(b). To the contrary, the record reveals that Congress recognized that the statutory bar in Section 1498(b) applies exclusively to government employees. *See, e.g.*, S. Rep. No. 86-1877, at 4 (1960); H.R. Rep. No. 86-624, at 3 (1959); Hr'g on H.R. 4059, Subcomm. on Patents, Trademarks, and Copyrights of the S. Comm. on the Judiciary, at 3-5 (June 2, 1960) (discussing "the double proviso . . . which in terms undertakes to define the situation in which Government employees shall and shall not have a right to copyright certain material" and referring only to "Government employee[s]" and "Government official[s]" in that context).

**3. The Case Law Does Not Support A Distinction.**

The case law does not support the government's contention that the Section 1498(b) bar applies to a class of non-employees. Indeed, the Supreme Court has made clear that a person in the service of the United States is a government employee. In *United States v. Dubilier Condenser Corp.*, 289 U.S. 178 (1933), the Supreme Court briefly discussed the proviso, found in the predecessor of what is now codified at 28 U.S.C. § 1498(a), that barred persons "in the employment or service of the Government of the United States" from suing the United States for patent infringement. The Court explained that this "restriction was imposed [so] that [the right to sue] should not extend to the owners of patents obtained by *employees* of

the government *while in the service*" of the United States. *Id*. at 204 (emphasis added). The Court thus recognized that "employees of the government" is coextensive with persons "in the service of the . . . United States."

The government ignores the Supreme Court's analysis and instead relies on *Herbert v. United States,* 36 Fed. Cl. 299 (1996), to support its argument that Congress intended to distinguish between employment and service. But *Herbert* turned on the court's determination that Dr. Herbert was, in fact, a government employee acting within the scope of his official functions or duties. *See id*. at 305-06, 307. The court noted in *dicta* that the work in question was also performed in the service of the government, *id*. at 306, but in doing so, the Court applied a portion of the statute that by its terms applies only to employees, *see* 28 U.S.C. § 1498(b) ("where the copyrighted work was prepared as part of the official functions of the *employee*" (emphasis added)), to a person it assumed *arguendo* was *not* an employee. *See Herbert*, 36 Fed. Cl. at 306. The court did not consider the statutory text or legislative history of Section 1498(b),[3] which, as discussed *supra*, demonstrate that Congress intended to refer to two

---

[3] The government's brief suggests, based on a footnote in *Herbert*, that the court considered legislative history in its cursory discussion regarding "service of the United States." *See* Def.'s Supp. Mem. at 11. The government's citation is misleading, however, because the footnote cited pertains only to the court's discussion of whether the work in question was prepared as part of the official functions and duties of a government *employee*. *See Herbert*, 36 Fed. Cl. at 306 n.4.

Similarly misleading is the government's citation of *Scherr v. Universal Match Corp.*, 417 F.2d 497 (2d Cir. 1969). *See* Def.'s Supp. Mem. at 11 n.3. The case sheds no light on the meaning of "in the . . . service of the United States." Indeed, the case neither discusses § 1498(b) nor mentions any other statute involving similar language. To the contrary, the Second Circuit held that two soldiers were government employees who created their work within the scope of their employment. 417 F.2d at 500-01. Furthermore, the court noted that, although most soldiers do not have the bargaining power of ordinary employees, the soldiers in *Scherr* did, unlike Mr. Walton. *See id.* at 501.

different but related types of government employees in using the terms "in the employment or the service of the United States."

**4. The Government Impermissibly Seeks To Expand The Scope Of 28 U.S.C. § 1498(b).**

The government asks this Court to interpret Section 1498(b) as a bar on *any* person, regardless of status, "who has used Government materials or facilities to make an invention," *see* Def.'s Supp. Mem. at 8, 10-11, 13, 14, based on the rationale that the purpose of the statute is to prevent the government from paying twice for the work. This argument is at odds with the limitations explicitly set forth in the text of the statute, as the government itself recognizes. *See id.* at 3 n.2 (stating that "Section 1498(b) now bars claims only for works created by Government employees or *those in the service of the United States who use Government time, material, or facilities in the preparation of the work*." (emphasis added)).

The statutory bar contained in Section 1498(b) contains both a status element and a resources element, and the statute's text makes clear that the resources element modifies the status element. *See* 28 U.S.C. § 1498(b). Congress clearly defined the *status* element as "a person [who was] in the employment or service of the United States." *Id.* Congress also clearly defined the *resources* element as requiring the use of government time, material, or facilities.

The government's flawed "purpose" argument gives little to no consideration to the interdependence of the status and resources elements of the statute. Instead, it asks this Court to disregard the status element altogether or engage in circular reasoning, whereby any person who used government time, materials, or facilities will be deemed to be "in the employment or service of the United States." *See* Def.'s Supp. Mem. at 8, 10-11, 13, 14.

The Court should reject this flawed analysis, which would effectively strike the status element from the statute, and should instead interpret "in the employment or service of the United States" to give all of its words effect, and in a manner that is consistent with the statutory text and history.

### B. The United States Is Not Entitled To A "Shop Right" In Mr. Walton's Copyrighted Work.

For the first time, in the context of its final pleading in support of its motion to dismiss or for summary judgment pursuant to RCFC 12(b)(6), the government asserts a new argument that it is entitled to a "shop right" in Mr. Walton's copyrighted work pursuant to 28 U.S.C. § 1498(b). The government failed to raise this argument in its Consolidated Motion to Dismiss or for Summary Judgment, as it was required to do pursuant to RCFC 12(g).[4] Indeed, the government previously argued that such "license-related issues" are not properly addressed in the context of the cross-motions for summary judgment and that they "would remain after the

---

[4] That Rule provides:

> A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) of this rule on any of the grounds there stated.

RCFC 12(g). Even if the government's new motion could be deemed related to a "defense of failure to state a claim upon which relief can be granted" pursuant to RCFC 12(h)(2), it is nevertheless improperly raised in a supplemental brief in response to an Order of this Court on unrelated issues, rather than in a motion presented properly pursuant to RCFC 7(b).

resolution of the summary judgment motions." Def.'s Opp. Pl.'s Cross-Mot. S.J. & Rep. Pl.'s Opp. Def.'s Consol. Mot. Dismiss or S.J. at 3.

In any event, it is well-settled that "the 'shop right' doctrine of patent law is not applicable to copyright." 1 *Nimmer* § 5.03[C] (footnote omitted). Indeed, "Congress expressly declined to incorporate . . . into copyright law" a right akin to the "shop right" of patent law. *Avtec Systems, Inc. v. Peiffer*, 21 F.3d 568, 575 n.16 (4th Cir. 1994).

The "shop right" doctrine is a common law patent doctrine arising "where a servant, during his hours of employment, working with his master's materials and appliances, conceives and perfects an invention for which he obtains a patent . . . ." *Dubilier Condenser*, 289 U.S. at 188. In such a situation, the inventor "must accord his master a nonexclusive right to practice the invention." *Id.* The Supreme Court has made clear that courts must look "[t]o the laws passed by the Congress, and to them alone," to determine "the extent and the limitations of the respective rights of the inventor and the public" under the shop right doctrine. *Id.* at 189.

The government's assertion that "the intended purpose of both the shop-right doctrine and [28 U.S.C. § 1498(b)] is to preclude the *copyright* owner from being paid twice for the same work," Def.'s Supp. Mem. at 7 (emphasis added), is inaccurate. The patent law doctrine of shop right does not apply under copyright law.[5] Indeed, Congress expressly declined to incorporate the shop right into the 1976 Copyright Act, while simultaneously enacting a broad doctrine of preemption of common law copyrights, *see* 17 U.S.C. § 301; *see also Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 477 n.2 (2d Cir. 2004) ("The 1976 Copyright

---

[5] This Court has applied the shop right doctrine to trade secrets, although the alleged trade secret in that case was in an "invention" for which the inventor "was in the process of obtaining a patent." *Lariscey v. United States*, 20 Cl. Ct. 385, 387, 391 (1990), *aff'd by an evenly divided court*, 981 F.2d 1244 (Fed. Cir. 1993).

Act ended common law copyright protection for all works that are the subject of federal preemption.”).

First, the legislative history of 17 U.S.C. § 201(b) – where the copyright doctrine of work for hire is codified – makes clear that Congress actively considered and rejected a proposal “for the recognition of something [in copyright law] similar to the ‘shop right’ doctrine of patent law” because:

> [t]he presumption that initial ownership rights vest in the employer for hire is well established in American copyright law, and to exchange that for the uncertainties of the shop right doctrine would not only be of dubious value to employers and employees alike, but might also reopen a number of other issues.

H.R. Rep. No. 94-1476, at 121 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5736-37.[6] Thus, Congress expressly considered and rejected the extension of the patent law shop right doctrine to copyright law, as the government belatedly suggests. *See Avtec Systems*, 21 F.3d at 575 n.16.

In addition, in light of Congress’s authority in the field of copyright law, *see* U.S. Const. art. I, § 8, cl. 8, and its broad preemption in that field, this Court should decline to extend doctrines from other areas of law, such as the shop right doctrine, into the field of copyright law. In the 1976 Copyright Act, Congress broadly preempted other laws that offer similar rights to copyrights:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the

---

[6] The House Report represents the most authoritative account of congressional intent. *Eldred v. Ashcroft*, 537 U.S. 186, 210 n.16 (2003) (“In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature’s intent lies in the Committee Reports on the bill, which ‘represent the considered and collective understanding of those [members of Congress] involved in drafting and studying proposed legislation.’”) (quoting *Garcia v. United States*, 469 U.S. 70, 76 (1984)) (alteration in original).

> subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). In this "bedrock provision" of the copyright statute, Congress "adopt[ed] a single system of Federal statutory copyright from creation," abrogating "[c]ommon law copyright protection for works coming within the scope of the statute." H.R. Rep. No. 94-1476, at 129, *reprinted in* 1976 U.S.C.C.A.N. at 5745. Although the statute also provides that "[n]othing in this title annuls or limits any rights or remedies under any other Federal statute," *id.* § 301(d), the patent law shop right itself does not apply to this case – even if it is a right under a federal statute, rather than federal common law or equity, *but see* 8 Donald S. Chisum, *Chisum on Patents*, § 22.03[3][a] (2006) (stating that the shop right rests on three doctrinal bases: "license implied in fact," "estoppel," and "equity and fairness").

Instead, the government argues that the doctrine should be extended to the copyright law based on the shop right doctrine's and Section 1498(b)'s alleged shared purpose of protecting the public fisc.[7] *See* Def's Supp. Mem. at 13. However, when the broad preemption of both "common law [and] statutes of any State" of Section 301(a) is coupled with the narrower exception for federal statutory rights and remedies in Section 301(d), this Court should exercise restraint before extending federal common law rights to the copyright law, particularly where, as here, "Congress's paramount goal in revising the 1976 Act [was to] enhanc[e] predictability and certainty of copyright ownership." *Cmty. for Creative Non-Violence v. Reid,* 490 U.S. 730, 749 (1989).

---

[7] The fiscal impact of the government's argument that prisoners are employees pursuant to agency law principles underlying myriad statutes encompassing employee rights and benefits would almost certainly be greater than the cost of allowing prisoners to own copyrights.

The government offers no justification for extending the shop right doctrine of patent law to the copyright law, other than the similarity in language between Sections 1498(a) and (b) and an alleged similarity in purpose between the shop right doctrine and Section 1498(b). Mere similarities are insufficient in a case such as this, where both the statutes enacted by Congress and congressional intent indicate that the copyright law should not incorporate the shop right doctrine. The shop right doctrine, whose scope is based on "the laws passed by the Congress, and . . . them alone," *Dubilier Condenser*, 289 U.S. at 189, thus should not be extended to the copyright law.

Even assuming *arguendo* that the doctrine did apply, the government's shop right argument is meritless. It is far from undisputed that Mr. Walton's participation in FPI-related activity is tantamount to being "in the employment or service of the United States" within the meaning of 28 U.S.C. § 1498(b) or that the government is entitled to a "shop right" as a result of Mr. Walton's use of those facilities and materials. Accordingly, the government's motion to dismiss or for summary judgment based on these allegedly "undisputed" issues should be denied.

## II. CONCLUSION

For the foregoing reasons, and the reasons set forth in Plaintiff's Supplemental Memorandum and in his initial briefs, Plaintiff respectfully requests that this Court grant his cross-motion for summary judgment.

Respectfully submitted,

s/Sarah L. Wilson
Christopher N. Sipes
Sarah L. Wilson
Scott C. Weidenfeller
COVINGTON & BURLING
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2401
(202) 662-6000 (telephone)
(202) 662-6291 (facsimile)
Attorneys for Plaintiff

Dated: December 18, 2006