# In the United States Court of Federal Claims

No. 04-1277 C
(Filed: January 23, 2008)

| | | |
|---|---|---|
| ROBERT JAMES WALTON, Plaintiff, | * | Copyright Infringement; RCFC 12(b)(1); Jurisdiction; Copyright Registration, 17 U.S.C. § 411(a); Supplemental Complaint; 28 U.S.C. § 1498(b); Blueport Co.; Definition of Employee; Definition of Service; Federal Inmate; Federal Prison Industries; Community for Creative Non-Violence |
| v. | * | |
| THE UNITED STATES, Defendant. | * | |

Sarah L. Wilson, Washington, DC, for plaintiff.

Robert G. Hilton, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Before the court are Defendant's Consolidated Motion to Dismiss and for Summary Judgment, which seeks dismissal of plaintiff's copyright infringement action against the United States, and Plaintiff's Cross-Motion for Summary Judgment, which seeks findings that plaintiff owns the copyright and that defendant is infringing on plaintiff's copyright. Plaintiff contends that as a federal inmate, he designed and produced at least one calendar for the General Services Administration ("GSA") under the auspices of UNICOR/Federal Prison Industries, Inc. ("FPI").[1] Plaintiff alleges that the government never compensated him for its use of the calendar and thus infringed his registered copyright pursuant to 17 U.S.C. § 106 (2000). Plaintiff also alleges that the government is engaged in ongoing infringement. As set forth in more detail below, the court concludes that it lacks jurisdiction to consider plaintiff's copyright infringement claim pursuant to 28 U.S.C. § 1498(b) (2000).

---

[1] As described more fully below, plaintiff's allegations revolve around his creation of a 2001 desk-blotter calendar, but plaintiff also contends that he created a 2000 desk-blotter calendar and other calendars for 2001.

## I. BACKGROUND

Plaintiff is a federal inmate who currently is incarcerated at the Federal Correctional Institution in Florence, Colorado.[2] Compl. ¶ 1. He was sentenced to his present term on November 17, 1993. Walton v. U.S. Marshals Serv., No. 95-3389-RDR, 1998 WL 220460, at *3 n.3 (D. Kan. Apr. 8, 1998) ("Walton VI").[3] While plaintiff's claims arise from events that occurred during his present term of incarceration, certain past events provide a fuller context for plaintiff's allegations.

From 1969 to 1973 and 1979 to 1980, plaintiff attended classes at two community colleges: Maricopa Technical College in Phoenix, Arizona, and Arapahoe Community College in Littleton, Colorado. Decl. ¶ 4; Decl. Ex. B. These classes comprised forty-one semester hours spanning five academic semesters. Decl. Ex. B. Plaintiff, a veteran of the Vietnam War, paid for his community college education with Pell Grants and G.I. Bill education benefits. Decl. ¶ 6.

Sometime in the mid-1980s, plaintiff pled guilty on two federal charges and was sentenced to prison for a period of twelve years. United States v. Walton, 892 F.2d 84 (10th Cir. 1989) (unpublished table decision); App. I at 39. It appears that plaintiff spent most of this prison term confined to the United States Penitentiary at Leavenworth, Kansas ("Leavenworth"). Walton v. United States, No. 89-3028-R, 1992 WL 131861, at *1 (D. Kan. May 27, 1992) ("Walton IV"); App. I at 37-39. On January 13, 1987, while an inmate at Leavenworth, plaintiff matriculated at Saint Mary College. Decl. ¶ 4; Decl. Ex. B. Plaintiff earned an Associate of Arts degree in Liberal Studies from Saint Mary College on December 16, 1988. Decl. ¶ 3; Decl. Ex. B. On December 21, 1989, Saint Mary College awarded plaintiff a Certificate of Achievement for his successful completion of a course called "Desktop Publishing." Decl. ¶ 3; Decl. Ex. C. Plaintiff then earned a Bachelor of Arts degree from Saint Mary College on July 20, 1990. Decl.

---

[2] The facts are taken from the following documents: Plaintiff's First Amended Complaint ("Compl."); the exhibits attached to the Complaint ("Compl. Ex."); the Joint Status Report filed on May 15, 2006 ("JSR"); the Appendix to Defendant's Consolidated Motion to Dismiss and for Summary Judgment ("App. I"); the Declaration of Robert J. Walton filed on October 17, 2006 ("Declaration" or "Decl."); the exhibits attached to the Declaration ("Decl. Ex."); the Appendix attached to Defendant's Supplemental Memorandum Regarding Defendant's Consolidated Motion to Dismiss or for Summary Judgment, and Plaintiff's Cross-Motion for Summary Judgment ("App. II"); and various unreported or unpublished decisions from the federal courts to which plaintiff was a party.

[3] There are eight unreported or unpublished decisions with plaintiff as a named party. For ease of reference, after the initial citation, the court identifies the cases by roman numeral in chronological order. Two of the eight decisions are not cited in this opinion: United States v. Walton, 42 F.3d 1404 (9th Cir. 1994) (unpublished table decision), and Walton v. United States, 833 F.2d 1018 (9th Cir. 1987) (unpublished table decision).

¶ 3; Decl. Exs. A, B. Saint Mary College provided plaintiff with grants to pay for his education during his incarceration. Decl. ¶ 6.

Following his graduation, plaintiff worked for two years as a teaching assistant in computer science at Saint Mary College. Id. ¶ 8. Plaintiff received a Certificate of Recognition for his service in this position on March 19, 1991. Id.; Decl. Ex. E. Further, according to his Inmate Education File Data Transcript, between June 1, 1988, and July 24, 1991, plaintiff completed course work in addition to the course work appearing on the Saint Mary College transcript. App. II at 16-18. Plaintiff was released from prison on August 16, 1991. Walton IV, 1992 WL 131861, at *1; App. I at 38.

Following his release from prison, Saint Mary College offered plaintiff a job teaching Desktop Publishing. Decl. ¶ 9. Plaintiff was unable to accept the position due to the expense of moving from Arizona to Kansas. Id. Instead, plaintiff remained in Arizona and performed "freelance computer graphics work for major corporate clients of DigiGraph Corporation . . . ." Id. Plaintiff also worked for the Center for Employment Training beginning in March 1992. Id.; Decl. Ex. F.

On May 15, 1992, plaintiff was arrested again on charges of bank robbery. Walton v. U.S. Marshals Serv., 161 F.3d 19 (10th Cir. 1998) (unpublished table decision). Subsequently, he was tried, convicted, and sentenced to his current term of imprisonment of 210 months. Id.; Walton VI, 1998 WL 220460, at *3 n.3. Although plaintiff has spent time in several federal penal institutions during his present incarceration, all of the events relevant to his copyright infringement claim occurred while he was confined at Leavenworth. Compl. ¶ 15; App. I at 34-36.

Plaintiff arrived at Leavenworth in the summer of 1994. App. I at 37. On September 9, 1994, plaintiff was assigned to work for FPI.[4] Id.; Compl. Ex. A at 1. FPI is a wholly owned corporation of the federal government that uses inmate labor to produce goods and services to sell to government agencies and private companies. Compl. ¶ 7; App. I at 4, 26, 44. Congress created FPI in 1934 "with the mission of providing work simulation programs and training opportunities for inmates confined in federal correctional facilities." App. I at 26. This congressional intent was implemented by the Federal Bureau of Prisons through Program Statement 8120.02, "FPI Work Programs for Inmates," dated July 15, 1999 ("Program

[4] FPI's commercial or trade name is UNICOR. App. I at 44.

Statement").[5] Id. at 27, 41-88. The Program Statement implements the federal regulations found at 28 C.F.R. §§ 345.10-.84. Id. at 43.

The Program Statement provides that inmates interested in working for FPI are to submit applications to be placed on a waiting list. Id. at 28, 55. FPI then hires inmates in sequence from the waiting list. Id. Exceptions to this hiring protocol can be made for inmates with "needed skills." Id. Upon assignment to FPI, inmates receive compensation and benefits. Id. at 29, 51-52, 65-78. Compensation ranges from $0.23 per hour for Grade 5 to $1.15 per hour for Grade 1. Id. at 29, 65. Inmates do not pay income taxes on their FPI compensation. Id. at 30. Benefits include paid vacation and holidays, premium pay, longevity pay, overtime pay, and accident compensation. Id. at 29, 65-72. Inmates do not accrue or receive Social Security, retirement, or medical benefits; life insurance; or other nonenumerated benefits. Id. at 29. Further, inmates may not supervise other inmates. Id. at 30.

Inmates assigned to FPI typically work in one of two daily shifts, and have no recourse over a shift assignment. Id. Foremen assign all work to the inmates, who may not perform such work outside of FPI's factory or outside their assigned shift. Id. at 30-32, 59-61. Additionally, inmates may not refuse a work assignment. Id. at 31. All tools, equipment, and materials are supplied to the inmates by FPI, and the inmates may not use their own tools, equipment, and supplies or remove FPI's tools, equipment, and supplies from the FPI factory. Id. at 31-32, 60-61.

Although plaintiff did not request an assignment to work for FPI, Comp. Ex. A at 1, he was assigned to FPI's Textile II division, id.; App. I at 37. Prior to receiving his assignment, plaintiff was informed by an FPI staff member that the prison had the authority to assign a prisoner to work for FPI without the prisoner's written request. Compl. Ex. A at 1. However, while plaintiff was working in the Textile II division, he was provided with Form BP-148(70), "Inmate Request to Staff Member," which is a form inmates use to request assignment to FPI. Id. at 1-2. The form was backdated to September 9, 1994. Id. at 2. Plaintiff refused to sign the form. Id.

After about a month, plaintiff was reassigned to the UNICOR Print Factory ("Print Factory") due to medical restrictions. Id. at 1-2. The Print Factory "provides custom printing services, typesetting and graphics services." App. I at 27. As with all FPI factories, foremen

---

[5] The Program Statement was issued after plaintiff was assigned to work for FPI. See App. I at 28 (noting that a portion of the Program Statement was "implemented after inmate Walton was assigned to FPI"); id. at 37 (reflecting the assignment date); Compl. Ex. A at 1 (same). According to the Program Statement, the differences from the previous version concern: (1) eligibility of pretrial inmates and inmates under orders of deportation, exclusion, or removal; (2) deletion of references to the WITSEC Program, and (3) clarification of Table I of Chapter 5, titled Guidelines for Inmate Pay and Benefits. App. I at 41-42. These changes do not appear to be relevant to the case at bar.

assigned work to inmates, who had no independent control over what work they were assigned or the creative content of that work. Id. at 32. In particular, foremen made "all creative decisions regarding the content, layout and design of each project." Id. Furthermore, inmates performed all work on computers owned and maintained by FPI, and were not allowed to remove the computers or any electronic media from the Print Factory. Id. at 31-32.

Plaintiff worked at the Print Factory between October 1994 and February 2001. Id. at 34-37; accord id. at 7, 27; Compl. ¶ 15. At no time during this period did plaintiff submit a request to be assigned to work for FPI. Compl. Ex. A at 2.

In early 1999, plaintiff was assigned to the Prepress Department at the Print Factory as a Computer Operator. Id. The Print Factory foreman asserts that no prior experience was required for an assignment to the Print Factory and that FPI does not review an inmate's history to ascertain prior printing experience. App. I at 27-28. However, plaintiff contends that this assignment was due to his "formal college education, certification in Desktop Publishing, two years of post-graduate teaching (in computer sciences[)], and two years of professional electronic typesetting, graphics, layout and design experience . . . ." Compl. Ex. A at 2. Plaintiff did not require any technical training for the position and learned the administrative aspects of the job from a coworker. Id. Due to the serious medical problems suffered by the Prepress Department foreman, plaintiff had minimal supervision while working in this position. Id.

As a Computer Operator in the Prepress Department, plaintiff would receive a job in the form of a "job jacket" or "run jacket." Id. The job jacket contained the specifications for the job or publication, information regarding approvals, notice of the types of proofs required, and requests for samples or the return of the customer's original, conceptual art. Id.

In December 1999, plaintiff was instructed to design a 2001 desk-blotter calendar for the GSA, which had entered into a contract for the "conception, design, layout, set-up, rendering, and production of calendars and art for calendar years 2000 and 2001." Id. at 3; Compl. ¶¶ 6, 16; App. I at 4, 7. Plaintiff "was instructed to redesign from [his] previous year['s] calendar (2000), which contained a single embedded, screen graphic image [of] an American Bald Eagle on a horizontal shield . . . ." Compl. Ex. A at 3; see also Compl. Ex. B at 1 (containing plaintiff's claim that he also designed the 2000 desk-blotter calendar). Each month of the thirteen-month calendar was to have a graphic relating to the federal government's role in society centered behind the calendar grid, and the graphic was to be 10-15 percent of the "images' normal density, creating a 'watermark' effect." Compl. ¶ 17; Compl. Ex. A at 3; App. I at 7. For the 2001 calendar, plaintiff was charged with composing, drawing, or otherwise including twelve new graphics, with the bald eagle image being used for the month of January 2002. Compl. Ex. A at 3; App. I at 7-8.

Plaintiff began the creation of the calendar by composing the calendar grid in a design/layout software application. Decl. ¶ 11. Plaintiff adjusted each grid, as appropriate, for each month, and selected all fonts, typefaces, and colors. Id. Plaintiff then added "all gutters,

edges, cut-marks, register marks, color bars, and bugs (printer's aids for the presses, paper cutters, and platemakers)." Id.

After composing the calendar grids, plaintiff created the graphics to place in the calendar. Id. ¶¶ 12-17. He began the process by using nonproprietary, stock images as mock-ups for his desired graphics. Id. ¶ 12; cf. App. I at 32 (asserting, without additional explanation, that clip art was used for the calendar). He selected elements or objects from the stock images and placed them on his pasteboard or layout page. Decl. ¶ 14. Plaintiff then converted the resulting file into either a vector graphic file, the preferred option, or a raster graphic file. Id. In the new file, plaintiff "erased or deleted everything except the defining outline of the image," and made all of the blank space transparent. Id. He then redrew the remainder of the image to create a version that was "sufficiently different to enable the application not to require the presence of the original image in order to print the composites." Id. But see App. I at 32 (containing the Print Factory foreman's assertion that "[n]one of the pictures included in the calendar were drawn freehand"). Plaintiff then imported the image into Adobe Photoshop to apply color, texture, and "other features, such as 'engraving lines,' 'pointilization,' 'trapping,' or creation of the watermark effect." Decl. ¶ 14. He saved the resulting image, imported the graphic files into Adobe PageMaker, and placed the graphics on the appropriate month's grid. Id.

Plaintiff submitted his images to the Prepress Department foreman, the Print Factory general foreman, the Print Factory manager, and a GSA representative in Raytown, Missouri, for approval. Id.; Compl. ¶ 18; Compl. Ex. at 3; App. I at 8, 32. Ultimately, he submitted approximately thirty to forty images before the GSA selected the final images. Decl. ¶ 17; App. I at 32-33. But see Compl. Ex. A at 3 (indicating that plaintiff created approximately twenty-six images for approval). Once plaintiff made any requested modifications to his images, the GSA representative forwarded the proofs to Washington, DC, for final approval. Decl. ¶ 14; Compl. ¶ 28; Compl. Ex. A at 3; App. I at 8. Once the Washington, DC office had given its approval, plaintiff sought permission from the Prepress Department foreman to pre-flight the final printable PageMager production files "to ensure that the off-site film printers could print" his drawn objects and composite graphic images. Decl. ¶ 14; Compl. Ex. A at 3-4; App. I at 8. He then saved the pre-flighted file into a permanent file that contained all of the GSA jobs on which he had worked. Decl. ¶ 14. Plaintiff saved a copy of the file onto an Iomega Zip disk for the outside contract service bureau to print the wide format negatives. Id.; Compl. ¶¶ 19-20; App. I at 8. He provided the disk, along with the pre-flight reports, to the Sheet Press foreman. Compl. ¶ 20; App. I at 8. But see Compl. Ex. A at 4 (indicating that he submitted the disk and reports to the Prepress Department foreman). Finally, plaintiff produced two sets of "film negatives for the artwork to be used for each month, as a 10-15% background screened image" pursuant to the requirements of the Print Factory platemaker. Compl. ¶ 21; App. I at 8.

Plaintiff alleges that he "changed virtually every aspect of any image [he] used in a page/layout composition." Decl. ¶ 16. In addition, plaintiff states that some of his compositions were scenes "made up of multiple objects made from myriad other objects . . . ." Id. Plaintiff

indicates that he performed ninety percent of his work by hand drawing with a mouse or keyboard. Id. ¶ 17.

Plaintiff created the 2001 calendar in February and March 2000. Compl. ¶ 19; Compl. Ex. A at 4; App. I at 8. During this time, plaintiff expressed concern to the Prepress Department foreman that FPI was misappropriating his "original art, designs, images, words and phrases, and creations," in violation of plaintiff's intellectual property rights. Compl. ¶ 24; Compl. Ex. A at 4; App. I at 8. As a result, plaintiff requested permission to include his name and a copyright symbol on the calendar and to forward two copies of the calendar proofs to his home. Compl. ¶ 22; Compl. Ex. A at 4; App. I at 8. The Prepress Department foreman informed plaintiff that he was not permitted to remove anything from the prepress room or Print Factory and that the calendars belonged to FPI by virtue of plaintiff's work assignment. Compl. ¶¶ 23, 25; Compl. Ex. A at 4; App. I at 8. Further, the Prepress Department foreman informed plaintiff that if plaintiff failed to comply with these instructions, he would face disciplinary action. Compl. ¶ 23; Compl. Ex. A at 4-5; App. I at 8. Plaintiff also asked the Print Factory general foreman for copies of the calendars, but his request was again refused. Compl. ¶ 27; App. I at 8. Thus, to protect his alleged intellectual property and preserve evidence that could support a legal claim, plaintiff marked many of his images with Adobe Photoshop's internal copyright function and "hid" copies of the calendar files on hard drives and back-up drives on the computers in the prepress room. Compl. Ex. A at 4; Decl. ¶ 14.

In addition to the 2001 desk-blotter calendar, plaintiff redesigned the 2001 Appointment Book desk calendar and retypeset the 2001 Three-Month-at-a-Glance wall calendar. Compl. ¶ 16; Compl. Ex. A at 5; App. I at 7. The Print Factory "produced and shipped millions of copies of the calendars to GSA warehouses . . . and various private vendors . . . ." Compl. ¶ 29; App. I at 8. In addition to the calendars, and throughout his assignment to the FPI Print Factory, plaintiff "designed, created images and graphics for, typeset, or otherwise produced forms, documents, signs, brochures, letterheads, logos, and other printed/published material for various federal agencies and independent U.S. Government Organizations." Compl. Ex. A at 5. FPI did not provide plaintiff with compensation outside of his FPI wages, an agreement for the use of his works by the GSA, or any attribution for any of the calendars or other work he produced while assigned to the Print Factory. Id.; Compl. ¶¶ 30-31; App. I at 8.

Plaintiff was transferred from Leavenworth in May 2001. Compl. Ex. A at 5; App. I at 34. On June 9, 2001, plaintiff filed a tort claim with the GSA, seeking damages in the amount of $500,000 for the alleged copyright infringement with respect to various calendars. Compl. ¶ 32; Compl. Ex. A at 5; Compl. Ex. B. The GSA denied plaintiff's claim in full by letter dated July 11, 2001. Compl. ¶ 33; Compl. Ex. A at 5; Compl. Ex. C. The GSA noted that at the time plaintiff created the calendars, he was "an inmate working for" FPI, and unless plaintiff had an agreement with FPI that preserved his intellectual property rights, the FPI was the owner of the works pursuant to federal copyright law. Compl. ¶ 33; Compl. Ex. C. The GSA letter denying plaintiff's claim indicated that plaintiff could appeal the decision in federal district court within six months. Compl. ¶ 33; Compl. Ex. C.

On November 21, 2001, plaintiff, proceeding pro se, filed suit appealing the GSA's decision in the United States District Court for the District of Columbia. Compl. ¶ 9; App. I at 1-23. Subsequently, the case was transferred to the United States District Court for the Northern District of Texas on February 4, 2002, and then to the United States District Court for the District of Kansas on August 21, 2002. Compl. ¶¶ 10-11. Plaintiff's case was finally transferred to the United States Court of Federal Claims ("Court of Federal Claims") on May 3, 2004, due to this court's exclusive jurisdiction to entertain claims of copyright infringement against the federal government pursuant to 28 U.S.C. § 1498(b). Walton v. Gen. Servs. Admin., No. Civ.A.02-3272-CM, 2004 WL 957907, at *1 (D. Kan. May 3, 2004); Compl. ¶ 12.

Defendant's instant motion, filed on January 14, 2005, correctly notes that, pursuant to 17 U.S.C. § 411(a), plaintiff was not entitled to pursue an action in this court for copyright infringement until he had properly registered his copyright. Def.'s Consolidated Mot. Dismiss & Summ. J. ("Def.'s Mot.") 14. In an attempt to cure this defect, plaintiff, through newly-retained counsel, submitted an application for registration to the Copyright Office on April 28, 2005, Compl. ¶¶ 14, 34, and filed an amended complaint on July 18, 2005, to allege this fact.[6] Pursuant to orders dated July 19, 2005, October 26, 2005, and February 22, 2006,[7] the court stayed the case pending the Copyright Office's decision on plaintiff's application. In March 2006, the Copyright Office approved plaintiff's application and "registered plaintiff's copyright in the calendar as a compilation of images," effective April 28, 2005. JSR 1 & Ex. A.

---

[6] According to a May 12, 2005 order, issued by the judge previously assigned to this case, plaintiff submitted an amended complaint for filing on April 29, 2005. The court declined permission for the filing of the amended complaint, explaining that plaintiff had failed to comply with Rule 15(a) of the Rules of the United States Court of Federal Claims ("RCFC"), and directed plaintiff to file a motion for leave to amend his complaint. In response to the court's order, plaintiff filed a motion for reconsideration, or in the alternative, a motion for leave to amend, on May 20, 2005. In urging reconsideration, plaintiff contended that RCFC 15(a) gave him the right to amend his complaint "once as a matter of course at any time before a responsive pleading is served," and argued that defendant's consolidated motion to dismiss and for summary judgment did not qualify as a responsive pleading. In his alternative request for permission to amend his complaint, plaintiff noted that he recently had submitted an application to register his copyright and sought to add that allegation to his complaint. On July 19, 2005, the court granted plaintiff's motion for leave to amend the complaint and established an official filing date of July 18, 2005.

[7] The initial two stay orders were issued by the judge previously assigned to this case. The undersigned continued the stay with the February 22, 2006 order.

Defendant's instant motion seeks dismissal of plaintiff's complaint on three grounds.[8] First, defendant argues, pursuant to RCFC 12(b)(1), that this court lacks jurisdiction over plaintiff's claim because plaintiff had not yet registered his copyright.[9] Def.'s Mot. 1. Second, defendant urges dismissal of plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6) due to plaintiff's status as an employee of either FPI or the federal government. Id. at 1-2. Finally, defendant seeks summary judgment, pursuant to RCFC 56, on grounds identical to those asserted in support of its RCFC 12(b)(6) motion. Id. at 2.

Plaintiff's newly-retained counsel filed a cross-motion for summary judgment and opposition to defendant's consolidated motion to dismiss and for summary judgment on May 20, 2005.[10] Plaintiff contends that defendant's consolidated motion should be denied because prisoners are not employees. Pl.'s Cross-Mot. Summ. J. & Br. Opp'n Def.'s Consolidated Mot. Dismiss & Summ. J. ("Pl.'s Mot.") 2. Based upon the same reasoning, plaintiff urges summary judgment be entered on his behalf. Id. at 1.

At the time defendant submitted its opposition to plaintiff's cross-motion for summary judgment and reply in support of its consolidated motion to dismiss and motion for summary judgment,[11] plaintiff had filed an application for copyright registration but had not yet received a response from the Copyright Office. Thus, while acknowledging plaintiff's application for copyright registration, defendant noted that the courts were split as to whether actual registration was necessary for courts to exercise jurisdiction over copyright infringement suits. Def.'s Opp'n Pl.'s Cross-Mot. Summ. J., & Reply Pl.'s Opp'n Def.'s Consolidated Mot. Dismiss or Summ. J. ("Def.'s Opp'n") 3. Defendant also contested plaintiff's arguments relating to copyright ownership. Plaintiff responded to defendant's arguments in his July 7, 2005 reply in support of his cross-motion for summary judgment. Supplemental briefing regarding this court's jurisdiction and additional issues was necessary and the parties completed this briefing on September 4, 2007. The court is now prepared to rule.

---

[8] Defendant filed its motion before plaintiff filed his amended complaint. The court considers defendant's motion as if it addressed plaintiff's amended complaint.

[9] As noted above, defendant filed its motion prior to plaintiff submitting his application for copyright registration. During a July 11, 2006 off-the-record status conference, defense counsel acknowledged that plaintiff had registered his copyright.

[10] Plaintiff, acting pro se, previously had filed an Opposition to Motion to Dismiss or for Summary Judgment on February 2, 2005. The court will treat plaintiff's counsel's May 20, 2005 filing as plaintiff's official opposition to defendant's consolidated motion.

[11] Defendant submitted its brief in June 2005, but the brief was not filed officially until January 11, 2006.

## II. UNITED STATES COPYRIGHT LAW

The United States Constitution empowers Congress to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries . . . ." U.S. Const. art. I, § 8, cl. 8. Pursuant to its constitutional authority, Congress enacted the Copyright Act of 1976, Pub. L. No. 94-553, 90 Stat. 2541 (codified as amended at 17 U.S.C. §§ 101-805, 1001-1205 (2000)) ("Copyright Act"). The Copyright Act provides copyright protection for "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device . . . ." 17 U.S.C. § 102(a). However, copyright protection is not afforded to works of the United States government. Id. § 105. A copyright in a work protected by the Copyright Act "vests initially in the author or authors of the work," id. § 201(a), except in the case of a work made for hire, id. § 201(b). To prove copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) copying by the alleged infringer. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

Allegations of copyright infringement against the United States are governed by 28 U.S.C. § 1498(b), which explicitly provides:

> [W]henever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, by a corporation owned or controlled by the United States, or by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government, the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims for the recovery of his reasonable and entire compensation as damages for such infringement, including the minimum statutory damages as set forth in section 504(c) of title 17, United States Code[.]

See also Williams & Wilkins Co. v. United States, 487 F.2d 1345, 1347 n.1 (Ct. Cl. 1973) (noting that the United States is liable for money damages pursuant to title 17 of the United States Code), aff'd per curiam by an equally divided court, 420 U.S. 376 (1975). However, the waiver of sovereign immunity is immediately followed by three provisos:

> Provided, That a Government employee shall have a right of action against the Government under this subsection except where he was in a position to order, influence, or induce use of the copyrighted work by the Government: Provided, however, That this subsection shall not confer a right of action on any copyright owner or any assignee of such owner with respect to any copyrighted work prepared by a person while in the employment or service of the United States, where the copyrighted work was prepared as a part of the official functions of the employee, or in the preparation of which Government time, material, or facilities

> were used: And provided further, That before such action against the United States has been instituted the appropriate corporation owned or controlled by the United States or the head of the appropriate department or agency of the Government, as the case may be, is authorized to enter into an agreement with the copyright owner in full settlement and compromise for the damages accruing to him by reason of such infringement and to settle the claim administratively out of available appropriations.

28 U.S.C. § 1498(b). Further, copyright owners have only three years from the date of an infringement within which to file a complaint. Id. ("[N]o recovery shall be had for any infringement of a copyright covered by this subsection committed more than three years prior to the filing of a complaint . . . ."). This limitations period is tolled for "the period between the date of receipt of a written claim for compensation by the Department or agency of the Government . . . having authority to settle such claim and the date of mailing by the Government of a notice to the claimant that his claim has been denied." Id.

## III. SUBJECT MATTER JURISDICTION

Whether the court has jurisdiction to decide the merits of a case is a threshold matter. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868). The parties or the court sua sponte may challenge the court's subject matter jurisdiction at any time. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

The ability of this court to hear and decide suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969). Congress has explicitly waived sovereign immunity in instances where the United States has infringed on a copyright. 28 U.S.C. § 1498(b); Boyle v. United States, 200 F.3d 1369, 1372-73 (Fed. Cir. 2000). The Court of Federal Claims has exclusive jurisdiction over copyright owners' infringement claims against the United States. 28 U.S.C. § 1498(b); Pentagen Techs. Int'l Ltd. v. United States, 175 F.3d 1003, 1005 (Fed. Cir. 1999).

As noted above, defendant seeks dismissal of plaintiff's complaint pursuant to RCFC 12(b)(1), arguing that the court lacks jurisdiction because plaintiff had not registered his copyright prior to filing suit. Def.'s Mot. 1. Two additional jurisdictional issues were raised by the court sua sponte. First, the court questioned whether FPI's status as a non-appropriated fund instrumentality precluded jurisdiction in this court. Second, at oral argument, the court questioned whether the provisos in 28 U.S.C. § 1498(b) implicated the court's jurisdiction and

whether plaintiff fell within the scope of one of those provisos. Tr. 15-18, 35-36, June 7, 2007. The court addresses defendant's argument first.

### A. The Court Cannot Grant Defendant's RCFC 12(b)(1) Motion to Dismiss on the Grounds Stated in Its Motion

One basis for defendant's instant motion is a lack of subject matter jurisdiction due to plaintiff's failure to register a copyright prior to filing suit. In ruling on a RCFC 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court assumes that the allegations in the complaint are true and construes those allegations in plaintiff's favor. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). The plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). The court may look to evidence outside of the pleadings to determine the existence of subject matter jurisdiction. Land v. Dollar, 330 U.S. 731, 735 & n.4 (1974); Reynolds, 846 F.2d at 747. If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

#### 1. Copyright Registration Is Required to Bring a Suit for Copyright Infringement in the Court of Federal Claims

Under the Copyright Act, a copyright owner cannot bring an action for infringement of a copyright until either the copyright is registered in accordance with the relevant provisions of the Copyright Act or the Copyright Office has refused to register the copyright.[12] 17 U.S.C. § 411(a). The consensus among federal appellate courts is that the provisions of 17 U.S.C. § 411(a) are jurisdictional.[13] See Perfect 10, Inc. v. Amazon.com, Inc., Nos. 06-55405, 06-55406, 06-55425, 06-55759, 06-55854, 06-55877, 2007 WL 4225819, at *1 n.1 (9th Cir. Dec. 3, 2007); In re Literary Works in Elec. Databases Copyright Litig., Nos. 05-5943-cv(L), 06-0223-cv(CON), 2007 WL 4197413, at *5 (2d Cir. Nov. 29, 2007); Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 154 (1st Cir. 2007); La Resolana Architects, PA v. Clay Realtors Angel Fire, 416 F.3d 1195, 1200 (10th Cir. 2005); Positive Black Talk Inc. v. Cash Money Records, Inc., 394 F.3d 357, 365 (5th Cir. 2004); Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 283 (4th Cir. 2003); M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1488 (11th Cir. 1990); accord Int'l Trade Mgmt., Inc. v. United States, 553 F. Supp. 402, 403 (Cl. Ct. 1982). However, the

---

[12] For the purposes of its discussion of defendant's jurisdictional argument, the court assumes, without deciding, that plaintiff is the author of the calendar at issue and owns the copyright for the calendar.

[13] While it possesses the exclusive jurisdiction to entertain copyright infringement suits against the United States, 28 U.S.C. § 1498(b), the Court of Federal Claims encounters a limited number of copyright cases. Thus, binding precedent is scarce. Accordingly, the court, when necessary, will look to the nonbinding, but persuasive, case law from other circuits.

provisions of 17 U.S.C. § 411(a) have been interpreted in two different ways with respect to jurisdiction. One line of cases holds that 17 U.S.C. § 411(a) requires that a copyright owner actually register the copyright or receive an actual denial of registration prior to instituting suit. See, e.g., La Resolana Architects, PA, 416 F.3d at 1200-02, 1205; Mays & Assocs. Inc. v. Euler, 370 F. Supp. 2d 362, 368-69 (D. Md. 2005); Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc., 315 F. Supp. 2d 1053, 1055 (C.D. Cal. 2004); Gerig v. Krause Publ'ns, Inc., 33 F. Supp. 2d 1304, 1306 (D. Kan. 1999); Int'l Trade Mgmt., Inc., 553 F. Supp. at 403. The other line of cases holds that only an application for copyright registration is required to bring suit. See, e.g., Positive Black Talk Inc., 394 F.3d at 365; Iconbazzar, L.L.C. v. Am. Online, Inc., 308 F. Supp. 2d 630, 634 (M.D.N.C. 2004); Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am., 81 F. Supp. 2d 70, 72 (D.D.C. 2000). None of these cases is binding on this court.

Lacking any binding authority, this court must look to the statute itself to determine its meaning. The cardinal rule in interpreting a statute is that "courts must presume that a legislature says in a statute what it means and means in a statute what is says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). A court begins its inquiry by examining the text of the statute. Lamie v. United States Trustee, 540 U.S. 526, 534 (2004). "Unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning" at the time Congress enacted the statute. Perrin v. United States, 444 U.S. 37, 42 (1979). When the statutory language is clear, a court's inquiry is complete. Conn. Nat'l Bank, 503 U.S. at 254.

The relevant portion of 17 U.S.C. § 411(a) provides:

> [N]o action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

The clear and plain language of the statute requires, as a condition to bringing suit, either the registration of the copyright or the Copyright Office's refusal to register the copyright. See La Resolana Architects, PA, 416 F.3d at 1200-01. Such plain language ends the court's inquiry. Accordingly, the court holds that actual copyright registration, or the denial of copyright registration, is required prior to bringing suit for copyright infringement.

**2. The Court Could Not Exercise Jurisdiction in This Case Until the Effective Date of Plaintiff's Copyright Registration–April 28, 2005**

In this case, plaintiff filed his copyright infringement suit on November 21, 2001, in the United States District Court for the District of Columbia.[14] Compl. ¶ 9; App. I at 1-23. At the time he filed suit, plaintiff had not registered any copyrights. See Def.'s Mot. 14-15. Thus, no federal court possessed subject matter jurisdiction over plaintiff's copyright infringement claims. However, plaintiff's complaint was not dismissed for this reason. Instead, plaintiff's complaint was transferred to various federal district courts, before transfer to the Court of Federal Claims in 2004. When the Court of Federal Claims received plaintiff's transfer complaint, plaintiff still had not registered any copyrights. See id. Thus, at the time the transfer complaint was filed, this court lacked jurisdiction over plaintiff's claim due to his failure to comply with 17 U.S.C. § 411(a).

In the early stages of this litigation, the previously assigned judge appointed counsel. As one of her first acts, plaintiff's counsel sought to cure the jurisdictional defect by (1) submitting an application for copyright registration on April 28, 2005, and (2) filing an amended complaint that alleged that fact on July 18, 2005. Upon the filing of the amended complaint, the court stayed proceedings in the case pending the Copyright Office's decision on plaintiff's application. The Copyright Office approved plaintiff's application and issued a copyright registration certificate in March 2006. JSR 1 & Ex. A.

Plaintiff has registered his copyright; thus, the court no longer lacks jurisdiction pursuant to 17 U.S.C. § 411(a) to entertain plaintiff's infringement claims.[15] But, the court must determine at what point in time jurisdiction could have vested.[16] The court considers three possible dates: the effective date of plaintiff's copyright registration–April 28, 2005; the date plaintiff filed his amended complaint–July 18, 2005; and when plaintiff received proof of copyright registration–March 2006. Both parties agree that the earliest possible date on which this court could assert jurisdiction is April 28, 2005. SMRJ 9; Def.'s Br. Jurisdiction Pursuant Ct.'s Order Jan. 9, 2007, at 7.

---

[14] Pursuant to 28 U.S.C. § 1631 (2000), for a complaint transferred to another court to cure a jurisdictional defect, the date on which the complaint initially is filed in the transferor court is considered the filing date of the complaint in the transferee court.

[15] As concluded below, however, the court lacks jurisdiction on other grounds.

[16] This question is wholly removed from any statute of limitations issues and such issues are not raised in the parties' cross-motions. Accordingly, the court reserves discussion of the statute of limitations, plaintiff's relation back argument, see Supplemental Mem. Regarding Jurisdiction ("SMRJ") 11-13, and plaintiff's equitable tolling argument, see id. at 13-14.

The Copyright Act provides that a copyright owner may not sue for copyright infringement "until registration of the copyright claim has been made . . . ." 17 U.S.C. § 411(a). If the court strictly interpreted this provision, it might find that it could not exercise jurisdiction until plaintiff actually received his proof of copyright registration in March 2006, because plaintiff would not have been able to institute a lawsuit until that date.

However, such an interpretation stretches too far the meaning of "until registration of the copyright claim has been made . . . ." The Copyright Office, pursuant to 17 U.S.C. § 410, decreed that plaintiff's copyright was registered effective April 28, 2005, the date when plaintiff submitted his application for copyright registration. Because plaintiff's copyright now has been registered, April 28, 2005, no longer serves as the application date; it is the official date of registration, i.e., the date "registration of the copyright claim has been made." Accordingly, in this case, the court is entitled to exercise its jurisdiction as of April 28, 2005. The next question before the court is whether, and if so, to what extent, plaintiff's postcomplaint copyright registration has cured the initial jurisdictional defect.[17]

### 3. The Court May Consider Only Those Claims Over Which It Has Jurisdiction at the Time a Complaint Is Filed

"The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989); see also Keene Corp. v. United States, 508 U.S. 200, 207 (1993); Black v. Sec'y of HHS, 93 F.3d 781, 790 (Fed. Cir. 1996); Sharman Co. v. United States, 2 F.3d 1564, 1569 (Fed. Cir. 1993), overruled on other grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995). Plaintiffs are permitted to amend their complaints to cure "[d]efective allegations of jurisdiction," 28 U.S.C. § 1653 (2000) (emphasis added), but events that occur subsequent to the filing of a complaint cannot alter the jurisdictional facts that existed at the time plaintiff filed the initial complaint. See Newman-Green, Inc., 490 U.S. at 830-32 (noting that 28 U.S.C. § 1653 "addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves."). Thus, presumably, because plaintiff did not register his copyright until after November 21, 2001, this court would not possess jurisdiction to consider the merits of his original complaint.

However, despite the United States Supreme Court's ("Supreme Court") holding in Newman-Green, Inc., some courts, including two federal appellate courts, have allowed plaintiffs to cure the initial, jurisdictional defect and proceed with copyright infringement suits even though those plaintiffs did not comply with 17 U.S.C. § 411(a) until after they filed suit. In

---

[17] Plaintiff argues that the court's stay of proceedings, pending the Copyright Office's decision on plaintiff's copyright application, implied that "registration would cure any jurisdictional defect." SMRJ 11. The court has no evidence that the judge who initially granted the stay intended this result. Further, the undersigned has not made such a representation to the parties.

Positive Black Talk Inc., the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") was presented with a plaintiff that filed a copyright infringement action four days before the Copyright Office received plaintiff's application for copyright registration. 394 F.3d at 365. The Fifth Circuit concluded that the plaintiff could cure its failure to comply with 17 U.S.C. § 411(a) by "amending or supplementing its complaint once it has registered the copyright." Id. In reaching this conclusion, the Fifth Circuit opined:

> The notion that the supplemental pleading cures the technical defect, notwithstanding the clear language of § 411, is consistent with the principle that technicalities should not prevent litigants from having their cases heard on the merits. . . .
>
> . . . .
>
> . . . [Section] 411 has a substantive component and a timing component–it requires the filing of a registration application, which must occur prior to the institution of the suit. . . . [T]he substantive requirement here was satisfied (because [plaintiff] filed a registration application, deposit, and fee), but the timing element was not (because the Copyright Office received the materials after [plaintiff] filed suit). [B]ecause [plaintiff] satisfied the substantive requirement of § 411 before final judgment, "considerations of finality, efficiency, and economy" counsel us to disregard the technical defect in timing in this particular case.

Id. at 366 (citing Mathews v. Diaz, 426 U.S. 67, 73-76 (1976), and quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 75 (1996)).

The United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") also has allowed a plaintiff to proceed with a copyright infringement suit despite plaintiff not having received proof of copyright registration until after filing suit.[18] In M.G.B. Homes, Inc., plaintiff

---

[18] To the court's knowledge, the only other federal appellate court that has addressed the postcomplaint curing of initial noncompliance with 17 U.S.C. § 411(a) is the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit"). In La Resolana Architects, PA, plaintiff filed suit after applying for copyright registration but before obtaining any proof that the Copyright Office had registered its copyright. 416 F.3d at 1197. On defendant's motion, the district court dismissed plaintiff's complaint for lack of subject matter jurisdiction because plaintiff had not shown adequate proof of copyright registration. Id. at 1198. After considering the plain language of the statute and the conflicting case law on the issue, the Tenth Circuit held:

> [W]e reject the proposition that § 411 confers federal court jurisdiction for an infringement action upon mere submission of a copyright application to the Copyright Office. In our view, the statute requires more: actual registration by the

filed an application for copyright registration, but had not received a registration certificate, prior to filing a suit for copyright infringement. 903 F.2d at 1488-89. Because plaintiff did not possess the required registration certificate, the district court dismissed plaintiff's complaint without prejudice to plaintiff filing a new complaint once it obtained the registration certificate. Id. at 1489. However, once plaintiff received proof of registration, instead of filing a new complaint, plaintiff sought to amend its initial complaint. Id. The district court permitted the amendment. Id. The Eleventh Circuit held that it possessed jurisdiction to entertain the appeal:

> [T]he filing of a new lawsuit would ordinarily have been the proper way for [plaintiff] to proceed once it received the registration certificate. Because the trial court had dismissed the suit for lack of jurisdiction, it was, at most, technically without jurisdiction to entertain [plaintiff]'s motion to amend its complaint. However, "[i]t is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities." . . .
>
> . . . .
>
> The amended complaint submitted by [plaintiff] contained all of the required allegations. On its face it asserted that the trial court had jurisdiction over the new infringement action. Except for the technical distinction between filing a new complaint and filing an amended complaint, the case would have been properly filed. [Defendant] was not prejudiced by this error.

Id. (quoting Foman v. Davis, 371 U.S. 178, 181 (1962)) (footnote omitted).

While not addressing the issue of copyright registration directly, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") seemingly has rejected the view of the Fifth and Eleventh Circuits that a jurisdictional defect can be cured by subsequent events. In GAF Bldg. Materials Corp. v. Elk Corp. of Dallas, 90 F.3d 479 (Fed. Cir. 1996), plaintiff filed an action seeking a declaration that defendant's yet-to-be-issued patent was invalid and that it had

---

> Registrar of Copyrights. Until that happens, an infringement action will not lie in the federal courts.

Id. at 1205; see also id. (concluding, after examining the overall statutory scheme regarding copyright registration, that "registration, or its refusal, requires more than the simple receipt of materials submitted by an author, and does not occur until the Registrar of Copyrights takes action"). Accordingly, the Tenth Circuit affirmed the district court's dismissal. Id. at 1208. However, because the issue was not before it, the Tenth Circuit "express[ed] no opinion as to whether the jurisdictional defect could be cured after commencement of the infringement action." Id.

not infringed said "patent."[19] Id. at 480. The trial court dismissed plaintiff's complaint for lack of jurisdiction, as it found no existing case or controversy,[20] and held that "the subsequent issuance of the patent after the filing of the complaint did not cure the jurisdictional defect." Id. at 480-81. In seeking reversal of the trial court's ruling, plaintiff argued that it had cured the jurisdictional defect by amending its complaint after the patent was issued to the defendant. Id. at 483. Plaintiff supported its argument by citing decisions from federal courts in which copyright plaintiffs were permitted to amend their original complaints to allege that they had satisfied the statute's registration requirement after they filed their complaints. Id. The Federal Circuit rejected plaintiff's argument and held: "These authorities, apart from being nonbinding on us, are unpersuasive. . . . [T]here was no jurisdiction when [plaintiff] filed its original complaint." Id. It bears noting that GAF Building Materials Corp. is a patent case, and that the Federal Circuit's discussion of the copyright cases cited by plaintiff may be considered dictum.[21] However, the court did label the copyright cases from other jurisdictions as "unpersuasive." Altogether, it appears that binding Federal Circuit case law has not departed from the established rule that jurisdiction is determined on the basis of the facts that exist at the time the complaint was filed.

On the other hand, the court is mindful of the Federal Circuit's decision in Black, which concerns the Vaccine Act. Under the Vaccine Act, in order to receive compensation for vaccine-related injuries, petitioners must file a timely petition that, among other requirements, includes "documentation demonstrating that the injured person 'incurred unreimbursable expenses . . . in

---

[19] "[B]ecause of the historic kinship between patent law and copyright law," the court can, with caution, apply the principles of patent law to the facts of this case. Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 439 & n.19 (1984).

[20] Plaintiff correctly notes that there is a difference between constitutional jurisdiction (i.e., justiciability) and jurisdiction granted by statute. See SMRJ 6-8. However, the Federal Circuit has applied the rule that jurisdiction depends on the facts as they exist at the time the complaint is filed in situations where jurisdiction was created by statute. See Keene Corp., 508 U.S. at 207 (considering the jurisdictional implications of 28 U.S.C. § 1500); Black, 93 F.3d at 790 (considering the jurisdictional implications of the $1,000 expenditure requirement of the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act")); Sharman Co., 2 F.3d at 1569 (considering the jurisdictional implications of the Contract Disputes Act of 1978's requirement of a final decision from the contracting officer).

[21] In fact, while not explicitly stated, the Federal Circuit in GAF Building Materials Corp. may have refused to apply copyright precedent in a patent case because of the different points at which copyrights and patents may be infringed. See SMRJ 8. A copyright may be infringed once a work is created; copyright registration is not required for an infringement to occur. See GAF Bldg. Materials Corp., 90 F.3d at 483. However, the requirements under patent law are stricter–a patent may only be infringed after it is issued. See id. Thus, the Federal Circuit may not view the less strict standards of copyright law as applicable in a patent case.

an amount greater than $1,000.'" 93 F.3d at 784 (quoting 42 U.S.C. § 300aa-11(c)(1)(D)(I)). In Black, none of the three petitioners met the $1,000 requirement prior to filing their petitions. Id. at 784-85. However, one of the petitioners met the requirement after the expiration of the relevant statute of limitations and another petitioner met the requirement within the applicable statute of limitations. Id. at 784. The Federal Circuit held that the latter petitioner, upon filing supplemental pleadings pursuant to RCFC 15(d), could proceed with her case. Id. at 790-92. The court reasoned:

> [F]ederal court jurisdiction is "time-specific," in that the existence of federal jurisdiction "ordinarily depends on the facts as they exist when the complaint was filed." Nonetheless, a defect in the plaintiff's case, even a jurisdictional defect, can be cured by a supplemental pleading under Rule 15(d) in appropriate circumstances.

Id. at 790 (citations omitted).

Taken together, GAF Building Materials Corp. and Black stand for the proposition that while, ordinarily, jurisdiction must exist at the time a complaint is initially filed, there can be limited circumstances that could permit the filing of a supplemental complaint to cure a jurisdictional defect. Federal Circuit precedent binds this court. Thus, the court must determine whether this case presents the appropriate circumstance in which to allow plaintiff's amended complaint to cure the jurisdictional defect.

**4. Plaintiff's Amended Complaint Does Not Cure the Initial Jurisdictional Defect in This Case but Does Establish Jurisdiction in This Court as of a Later Date**

In this case, the court permitted plaintiff to file–as styled by plaintiff–an amended complaint on July 18, 2005. However, because the amended complaint contains additional allegations concerning events that occurred after plaintiff filed his initial complaint, the court treats plaintiff's amended complaint as a de facto supplemental complaint. See RCFC 15(d) ("Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth the transactions or occurrences or events which have happened since the date of the pleadings sought to be supplemented."); GAF Bldg. Materials Corp., 90 F.3d at 483 n.5 (noting that plaintiff's "amended" complaint "should have been denominated a supplemental pleading"). Treating plaintiff's amended complaint as a de facto supplemental complaint, the court must determine whether it effectively cured the initial jurisdictional defect of plaintiff's November 21, 2001 complaint.

The court previously held that actual registration of a copyright is required to institute suit. Given the current procedural posture of the case at bar, the court must now expand upon this holding. The court first notes that plaintiff's amended complaint would be ripe for dismissal if plaintiff only had applied for copyright registration but had not yet received proof that the Copyright Office registered his copyright. In that scenario, the copyright would not have been

registered and, as a result, the court would not have possessed jurisdiction. Here, however, plaintiff received proof of copyright registration after filing the amended complaint on July 18, 2005, but that registration was effective prior to July 18, 2005 (i.e., on April 28, 2005).

In Black, the Federal Circuit explained that "[d]etermining whether a supplemental pleading can be used to rescue an insufficient petition or complaint in a particular case depends on a careful reading of the substantive provision at issue." 93 F.3d at 790. As one example, the court suggested that a supplemental complaint could not cure a jurisdictional defect where the statute contained "an express prohibition against filing a complaint before the expiration of a statutory waiting period or before exhausting administrative remedies." Id. at 790-91 (citing McNeil v. United States, 508 U.S. 106 (1993); Hallstrom v. Tillamook County, 493 U.S. 20 (1989)). The court distinguished statutes containing an express prohibition against filing suit from those statutes that merely "barred the claimant from obtaining judicial review before seeking administrative relief," reiterating the Supreme Court's conclusion that allowing supplemental pleadings to cure a jurisdictional defect in the latter case would "not do violence to the applicable statute . . . ." Id. at 791 (citing Mathews v. Diaz, 426 U.S. 67 (1976)). In analyzing the Vaccine Act's $1,000 requirement, the Federal Circuit concluded that the requirement was more analogous the statute in Mathews, and that a failure to comply with the requirement could be cured by a supplemental pleading. Id. However, in order to take advantage of a supplemental pleading, a petitioner was required to have met the $1,000 requirement within the relevant limitations period. Id. at 790-92.

The statute at issue in Black–the Vaccine Act's $1,000 requirement–is quite different from 17 U.S.C. § 411(a). In Black, the Federal Circuit held that, in Vaccine Act cases, both the filing of the complaint and the expenditure of $1,000 must occur sometime within the limitations period, but in no particular order. In essence, the Federal Circuit concluded that the Vaccine Act's $1,000 requirement was not a jurisdictional prerequisite to filing suit. However, in this case, the Copyright Act requires that a complaint alleging copyright infringement be filed within the specified limitations period, but only after the copyright has been registered. In other words, copyright registration is a jurisdictional prerequisite to filing suit. In this respect, the requirements of 17 U.S.C. § 411(a) are more like the express prohibitions found in the statutes in McNeil and Hallstrom and less like the requirements of the statute in Mathews.

Applying this finding to the case at bar, the court holds that plaintiff's amended complaint does not cure the jurisdictional defect of plaintiff's November 21, 2001 complaint. But, this holding does not necessarily end the court's inquiry. Because the court is treating plaintiff's amended complaint as a de facto supplemental complaint, the amended complaint is analogous to a separate complaint distinct from the initial, November 21, 2001 complaint.[22] See Christian

---

[22] The court notes that treating plaintiff's amended complaint in this manner might raise issues with respect to the statute of limitations. However, as noted above, the court reserves discussion of the statute of limitations. C.f. Caban-Wheeler v. Elsea, 71 F.3d 837, 841 (11th Cir. 1996) ("[T]he decision whether to allow a plaintiff to amend the complaint is separate from, and

Appalachian Project, Inc. v. United States, 10 Cl. Ct. 595, 597 (1986) (treating a "First Amended and Substituted Complaint" as if it were a new complaint to avoid the "unnecessary trouble and expense" of plaintiff having to file a new complaint). Treated in this manner, the amended complaint would be properly before the court because it was filed after the effective date of plaintiff's copyright registration and appears to allege ongoing copyright infringement by defendant. Compl. ¶ 38. Thus, the court cannot grant defendant's RCFC 12(b)(1) motion to dismiss on the grounds that plaintiff did not register his copyright prior to filing suit.

### B. FPI's Status as a Non-Appropriated Fund Instrumentality Does Not Affect the Court's Jurisdiction

Although the court cannot grant defendant's RCFC 12(b)(1) motion to dismiss on the grounds asserted in the motion, it must consider other potential jurisdictional impediments. The first of these issues is the identity of the allegedly infringing entity. Although plaintiff properly captioned the amended complaint naming the United States as defendant, 28 U.S.C. § 1491(a)(1), plaintiff's allegations originate from the actions of FPI.[23] Because FPI "receives no congressional appropriations" and Congress intended FPI's funds to be separate from general federal revenues, it is a non-appropriated fund instrumentality. Core Concepts, Inc. v. United States, 327 F.3d 1331, 1335-37 (Fed. Cir. 2003). The court, except in a small number of instances not relevant here, "lacks jurisdiction over actions in which appropriated funds cannot be obligated." Id. at 1334. Thus, if FPI had been the only entity against which plaintiff was alleging copyright infringement, the court would have had no choice but to dismiss plaintiff's claims. However, plaintiff also alleges that the GSA infringed his copyrights. Because GSA is

---

based upon a different standard than, the decision whether the new claim relates back to the original complaint.").

[23] In fact, plaintiff, in the body of his amended complaint, names FPI, the GSA, and several individuals as "defendants," Compl. ¶¶ 2-7, and claims that "[t]he Defendants have infringed Plaintiff's copyrights," Compl. Prayer ¶ A. Of course, the United States is the only proper defendant in the Court of Federal Claims. See 28 U.S.C. § 1498(a)(1) (providing that the Court of Federal Claims has jurisdiction over claims against the United States); RCFC 10(a) (requiring that the United States be designated as the defendant in the Court of Federal Claims); Sherwood, 312 U.S. at 588 (concluding that jurisdiction in the Court of Federal Claims "is confined to the rendition of money judgments in suits brought for that relief against the United States, and if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court" (citations omitted)); Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003) ("[T]he only proper defendant for any matter before this court is the United States, not its officers, nor any other individual."); Nat'l City Bank of Evansville v. United States, 163 F. Supp. 846, 852 (Ct. Cl. 1958) ("It is well established that the jurisdiction of this court extends only to claims against the United States, and obviously a controversy between private parties could not be entertained." (footnotes omitted)).

not a non-appropriated fund instrumentality, the court's exercise of jurisdiction is not precluded on this basis.

## C. Plaintiff Cannot Establish Jurisdiction Under the Express Terms of 28 U.S.C. § 1498(b)

Despite finding that neither plaintiff's delay in registering his copyright nor the involvement of FPI precludes this court's exercise of jurisdiction, the court finds it necessary to analyze another aspect of jurisdiction: whether the second proviso in 28 U.S.C. § 1498(b) limits this court's jurisdiction, and if so, whether plaintiff falls within its scope.

### 1. The Second Proviso in 28 U.S.C. § 1498(b) Limits This Court's Jurisdiction

Although 28 U.S.C. § 1498(b) waives sovereign immunity for copyright claims against the United States, it also contains three provisos, two of which limit the type of claims that a copyright owner may bring. One of these provisos is relevant in the instant case and thus the court must determine how best to characterize it.

The court is aware of only one other decision that has considered this issue: Blueport Co. v. United States, 76 Fed. Cl. 702 (2007), appeal docketed, No. 07-5140 (Fed. Cir. June 29, 2007). In that case, an employee of the United States Air Force ("Air Force"), allegedly during his off-duty hours, wrote a computer program "to increase the functionality" of the Manpower Data System. Id. at 704. The employee eventually registered a copyright for the program and assigned all rights in the program to a company he established. Id. The company then sought to license the program to the Air Force, but the Air Force instead reverse engineered the program in an effort to develop its own program. Id. The company sued the United States for copyright infringement. Id.

The Blueport Co. court's threshold inquiry was whether the first two provisos found in 28 U.S.C. § 1498(b) were jurisdictional limitations, or nonjurisdictional affirmative defenses. See id. at 709-19. On one hand, the court noted that because 28 U.S.C. § 1498(b) contained both the waiver of sovereign immunity and the provisos, the provisos could be seen as conditions on the waiver and, accordingly, jurisdictional limitations. Id. at 711; see also id. ("In other words, the argument is that if Congress can open the door fully to lawsuits against the government, it certainly can only partly open that door."); id. at 714 ("[T]he traditional view[] is represented by the opening and partial opening of the sovereign immunity waiver door."). On the other hand, the court noted that Supreme Court precedent supported the argument that "once immunity from suit has been waived, all other 'conditions' are merely statutory provisions that do not implicate jurisdiction." Id. at 711-12 (citing Franconia Assocs. v. United States, 536 U.S. 129, 145 (2002); Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990)); accord id. at 714. In its analysis of its threshold inquiry, the court examined whether any prior decisions from the Federal Circuit or the Court of Federal Claims had addressed the issue or whether the same courts had addressed the similarly worded statutory provision concerning patent cases found in 28 U.S.C. § 1498(a). Id. at 712-14. The court quickly determined that the Federal Circuit had not addressed the issue,

id. at 712; that the two decisions of the Court of Federal Claims that had addressed the provisos found in 28 U.S.C. § 1498(b) were "collectively ambiguous at best regarding the jurisdictional versus affirmative defense issue," id. at 713; and that "no case considering the three provisos of § 1498(a) has determined whether they were affirmative defenses or a jurisdictional limitation,"[24] id.

The court then "probe[d] more deeply into how the Supreme Court and the Federal Circuit have resolved the general issue of whether conditions to waivers of sovereign immunity should always be considered as jurisdictional." Id. at 712, 714-19. The court, using the Supreme Court's decisions characterizing the Tucker Act's six-year limitations period and discussing the equitable tolling of that period as the basis for its discussion, described the shift from the "traditional view that conditions to sovereign immunity waiver are themselves jurisdictional limitations," id. at 715 (citing Kendall v. United States, 107 U.S. 123 (1883)), to "a more flexible test," id. at 715-16 (citing Irwin, 498 U.S. at 94-96). According to the court, the Supreme Court in Irwin held: "'Once Congress has made . . . a waiver . . . [the] condition . . . [ought to be] applicable to suits against the Government, in the same way that it is applicable to private suits . . . .'"[25] Id. at 716 (quoting 498 U.S. at 95). At the same time, the court noted, the Supreme Court "recognized that Congress 'may provide otherwise, if it wishes to do so.'" Id. (quoting 498 U.S. at 96).

Continuing with its analysis of statute of limitations and equitable tolling precedent, the court looked to how the Federal Circuit has applied the Supreme Court's holding in Irwin. First, the court explained that the Federal Circuit was not of one mind in construing the Tucker Act's statute of limitations. "One set of cases treats the failure to meet the limitations period as not jurisdictional, but instead as an element of a failure to state a claim under RCFC 12(b)(6)." Id. at 717 (citing Venture Coal Sales Co. v. United States, 370 F.3d 1102, 1105 n.2 (Fed. Cir. 2004); Ariadne Fin. Servs. Pty. Ltd. v. United States, 133 F.3d 874, 878 (Fed. Cir. 1998)). "The other set of Federal Circuit precedent takes the more traveled road and views conditions to the waiver of sovereign immunity, such as under the Tucker Act's six-year limitations period under 28 U.S.C. § 2501, as strictly jurisdictional."[26] Id. (citing MacLean v. United States, 454 F.3d 1334,

---

[24] Nevertheless, the court proceeded to find "the Federal Circuit's treatment of certain provisions for patents as jurisdictional" as support for its holding that the provisos in 28 U.S.C. § 1498(b) were jurisdictional. Blueport Co., 76 Fed. Cl. at 719.

[25] The complete quote from Irwin is: "Once Congress has made such a waiver, we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver." 498 U.S. at 95 (emphasis added).

[26] In its most recent decision on the issue, the Federal Circuit held that because the plaintiff "did not file its complaint within the six-year limitations period of 28 U.S.C. § 2501, . . . the Court of Federal Claims lacked jurisdiction." John R. Sand & Gravel Co. v. United States,

1336 (Fed. Cir. 2006); Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988)). The court then noted that despite the disparate holdings concerning the statute of limitations, "[t]he majority of the judges of the Federal Circuit . . . appear to subscribe to a variant of the Supreme Court's Irwin analysis." Id. In other words, the court indicated that despite the prevalent holding that the statute of limitations was "'a condition on the waiver of sovereign immunity,' and, therefore, 'jurisdictional in nature,'" the Federal Circuit "would nonetheless apply (paradoxically) Irwin's presumption favoring equitable tolling."[27] Id. (citing Martinez v. United States, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (en banc)) (footnote omitted).

After considering the above precedent, the court determined that regardless of whether conditions on the waiver of sovereign immunity are always jurisdictional pursuant to Kendall or only sometimes jurisdictional pursuant to Irwin, the provisos contained in 28 U.S.C. § 1498(b) were jurisdictional. Id. at 718. First, the court noted that the plain language of 28 U.S.C. § 1498(b) and the "close proximity" of the provisos to the waiver of sovereign immunity supported the view that "Congress waived sovereign immunity only if certain conditions were present." Id. Second, the court found that the Irwin rationale–applying limitations-related concepts similarly to the government as to private parties–was inapplicable to 28 U.S.C. § 1498(b) because copyright infringement claims against the government were not "general in application" like a limitations period. Id.; see also id. at 718-19 (likening the provisos to the more general tort exception in 28 U.S.C. § 1491(a)(1)).

Unsurprisingly, the parties in the instant case hold differing views on the decision in Blueport Co. Plaintiff finds the court's reasoning and result unpersuasive because the court "ignores Supreme Court precedent . . . and gives undue weight to 'drive-by' jurisdictional decisions." Supplemental Mem. Resp. Ct.'s June 7, 2007 & July 18, 2007 Orders ("Pl.'s 2d Supp'l Mem.") 6. The Supreme Court precedent to which plaintiff refers is Arbaugh, id., a case

---

457 F.3d 1345, 1346 (Fed. Cir. 2006), aff'd, No. 06-1164, slip op. (S. Ct. Jan. 8, 2008); see also id. at 1353 ("[Plaintiff]'s suit in the Court of Federal Claims was time-barred and that, therefore, the court lacked jurisdiction."), 1354 ("The six-year statute of limitations set forth in section 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims."). While the Supreme Court recently affirmed the judgment of the Federal Circuit, John R. Sand & Gravel Co., No. 06-1164, slip op. at 9, and held that 28 U.S.C. § 2501 "requires sua sponte consideration," id. at 1, it refrained from labeling the six-year limitations period of 28 U.S.C. § 2501 as jurisdictional, id. at 3 (noting that it "has long interpreted the court of claims limitation statute" as an "absolute" limit that, "[a]s convenient shorthand, the Court has sometimes referred to . . . as 'jurisdictional.'"). The Supreme Court decided John R. Sand & Gravel Co. after the Blueport Co. decision was issued.

[27] The Supreme Court's recent decision in John R. Sand & Gravel Co. has resolved this conflict by excluding 28 U.S.C. § 2501 from the scope of its holding in Irwin. See John R. Sand & Gravel Co., No. 06-1164, slip op. at 6-7 (holding that a "definitive earlier interpretation" of 28 U.S.C. § 2501 rebuts the presumption of equitable tolling).

in which the Supreme Court sought to clarify the distinction between proving subject matter jurisdiction and proving the elements of the underlying claim, 546 U.S. at 510-11. Such a clarification was necessary, in the Supreme Court's view, because "[j]udicial opinions . . . 'often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim.'" Id. at 511 (quoting Da Silva v. Kinsho Int'l Corp., 229 F.3d 358, 361 (2d Cir. 2000)). According to the Supreme Court, such judicial opinions are "'drive-by jurisdictional rulings' that should be accorded 'no precedential effect' . . . ." Id. (quoting Steel Co., 523 U.S. at 91). Thus, the Supreme Court created a "readily administrable bright line" test:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

Id. at 515-16 (citation & footnote omitted). Applying the Arbaugh test, plaintiff in the instant case argues that because the provisos in 28 U.S.C. § 1498(b) are not clearly identified as jurisdictional, they must be treated as affirmative defenses. Pl.'s 2d Supp'l Mem. 6; see also id. at 8 (arguing that the Blueport Co. court's comparison of the provisos in 28 U.S.C. § 1498(b) to the "tort exception" of 28 U.S.C. § 1491(a)(1) was inapt because the text of 28 U.S.C. § 1491(a)(1) explicitly provides for "jurisdiction to render judgment . . . in cases not sounding in tort").

In contrast, defendant argues that the court in Blueport Co. correctly characterized the provisos of 28 U.S.C. § 1498(b) as jurisdictional, Def.'s Br. Whether 28 U.S.C. § 1498(b) Proviso Is Jurisdictional, Pursuant Ct.'s Order June 7, 2007, at 1-2, stressing the court's argument that the plain meaning of the statute could not be read otherwise, id. at 3-4. Defendant counters plaintiff's reading of the provisos as separate from the statute's waiver of sovereign immunity by arguing that the statute must be construed "as a whole." Def.'s Reply Br. Whether 28 U.S.C. § 1498(b) Proviso Is Jurisdictional, Pursuant Ct.'s Order June 7, 2007 ("Def.'s 2d Reply Mem.") 2 (citing United States v. Morton, 467 U.S. 822, 828 (1984) ("We do not, however, construe statutory phrases in isolation; we read statutes as a whole.")). Further, defendant asserts that the provisos in 28 U.S.C. § 1498(b) are jurisdictional pursuant to the Arbaugh test, comparing the instant case to a case described in one of the footnotes in the Arbaugh decision. Id. at 4-5 (citing Arbaugh, 546 U.S. at 515 n.11). That case, Weinberger v. Salfi, 422 U.S. 749 (1975), addressed 42 U.S.C. § 405(h),[28] a statute "that expressly restrict[ed]

---

[28] At the time that the Supreme Court decided Weinberger, the relevant sentence of 42 U.S.C. § 405(h) provided: "'No action against the United States, the Secretary, or any officer or employee thereof shall be brought under (s 1331 et seq.) of Title 28 to recover on any claim arising under (Title II of the Social Security Act).'" 422 U.S. at 756.

application of a jurisdictional-conferring statute," as opposed to the more typical case where the jurisdictional restriction is contained solely within one statute. Arbaugh, 546 U.S. at 515 n.11. Defendant argues that even though 42 U.S.C. § 405(h) "never used the word jurisdiction," the Supreme Court "nevertheless found that it 'spoke' in jurisdictional terms." Def.'s 2d Reply Mem. 5. Thus, defendant argues, the provisos in 28 U.S.C. § 1498(b) need not specifically mention the word "jurisdiction" to be jurisdictional. Id.

As with 17 U.S.C. § 411(a), there is no binding precedent concerning whether the provisos contained in 28 U.S.C. § 1498(b) limit the court's jurisdiction. Thus, once again, this court must look to the statute itself to determine its meaning, presuming "that a legislature says in a statute what it means and means in a statute what is says there," Conn. Nat'l Bank, 503 U.S. at 254, while at the same time construing the statute as a whole, Morton, 467 U.S. at 828. As correctly framed by defendant, Def.'s 2d Reply Mem. 2, the crux of the problem here is that 28 U.S.C. § 1498(b) provides both the court's subject matter jurisdiction and plaintiff's substantive cause of action. The court finds, however, that the jurisdictional and substantive aspects of the statute can be distinguished.

Structurally, 28 U.S.C. § 1498(b) begins with the broad statement that copyright infringement claims against the United States may be brought exclusively in the Court of Federal Claims, which, set off by a colon, is followed by three provisos, only one of which is relevant in the instant case:

> [W]henever the copyright in any work protected under the copyright laws of the United States shall be infringed by the United States, . . . the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims . . . : Provided, however, That this subsection shall not confer a right of action on any copyright owner . . . with respect to any copyrighted work prepared by a person while in the employment or service of the United States, where the copyrighted work was prepared as a part of the official functions of the employee, or in the preparation of which Government time, material, or facilities were used . . . .

28 U.S.C. § 1498(b) (first & third emphasis added). The first underlined phrase establishes this court's jurisdiction, and the third underlined phrase clearly modifies the first. In this way, the statute is similar to the combined effect of the statutes in Weinberger. In Weinberger, the Supreme Court noted that 28 U.S.C. § 1331 provided for jurisdiction in the federal district courts over claims arising under United States law, 422 U.S. at 756, but held that 42 U.S.C. § 405(h) barred individuals from bringing claims pursuant to 28 U.S.C. § 1331 that arose under Title II of the Social Security Act, id. at 756-61 (construing the language: "'No action against the United States. . . . shall be brought under (s 1331 et seq.) of Title 28 to recover on any claim arising under (Title II of the Social Security Act).'"). Indeed, the instant case presents a stronger example for a jurisdictional construction of the statutory language as both the jurisdictional grant and the modifying clause are contained within the same statute. Accordingly, applying the test

articulated in Arbaugh, the court concludes that the second proviso of 28 U.S.C. § 1498(b) limits this court's jurisdiction over copyright infringement claims against the United States.[29] Thus, the court must now determine whether plaintiff is jurisdictionally excluded from pursuing his copyright infringement claims against the United States pursuant to one of the provisos.

**2. Plaintiff Falls Within the Scope of the Second Proviso Because He Was in the Service of the United States and Used the Government's Time, Material, and Facilities at the Time He Prepared the Calendar at Issue**

As noted above, only the second proviso contained within 28 U.S.C. § 1498(b) is relevant in the instant case:

> Provided, however, That this subsection shall not confer a right of action on any copyright owner or any assignee of such owner with respect to any copyrighted work prepared by a person while in the employment or service of the United States, where the copyrighted work was prepared as a part of the official functions of the employee, or in the preparation of which Government time, material, or facilities were used . . . .

28 U.S.C. § 1498(b). Pursuant to this proviso, plaintiff must show that, as the preparer of the calendar at issue, he was not in the "employment or service of the United States" or if he was in the "employment or service of the United States," that (1) he did not prepare the work as part of his official functions and (2) he did not prepare the work using defendant's time, material, or facilities.[30]

---

[29] Thus, this court reaches the same conclusion as the Blueport Co. court and agrees with the following portion of that court's analysis:

> The plain meaning of the text demonstrates that Congress waived sovereign immunity only if certain conditions were present. Textually, these conditions were drafted in close proximity to the waiver and thus should be considered exceptions to that waiver. To be sure, the conditions were literally and deliberately termed "provisos" to the waiver of sovereign immunity for copyright infringement . . . .

76 Fed. Cl. at 718 (footnote omitted).

[30] Defendant correctly notes that 17 U.S.C. § 105 prohibits the existence of any copyright in works prepared by a government employee as part of the employee's official duties. Def.'s Supplemental Mem. Regarding Def.'s Consolidated Mot. Dismiss & Summ. J., & Pl.'s Cross-Mot. Summ. J. ("Def.'s Supp'l Mem.") 3 n.2. As a result, defendant argues that 17 U.S.C. § 105 renders the "official functions" clause of 28 U.S.C. § 1489(b) moot because no one can own a

**a. The Terms "Employment" and "Service" Have Distinct Definitions Within the Context of 28 U.S.C. § 1498(b)**

The key phrase of the proviso is "employment or service of the United States." Neither "employment" nor "service" is defined within 28 U.S.C. § 1498, and no court has explored the meaning of this phrase in this statute.[31] See Def.'s Mot. 18 (labeling the issue as one of first impression). Thus, according to the well-established rules of statutory construction, the court must ascribe the "ordinary, contemporary, common meaning" to the terms "employment" and "service." Lamie, 540 U.S. at 534. Further, "[w]here Congress uses terms that have accumulated settled meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." NLRB v. Amax Coal Co., 453 U.S. 322, 329 (1981).

The Supreme Court, in construing the term "employee" in the definition of "work for hire" found in the Copyright Act, noted that in prior cases, "when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 739-40 (1989). Because the work for hire provisions did not indicate any congressional intent to define "employee" in any other way, the Supreme Court held "that the term 'employee' should be understood in light of the general common law of agency." Id. at 740-41. This reasoning is directly applicable to 28 U.S.C. § 1498(b), a statute that concerns a specific class of copyright infringement claims. This statute does not reflect any congressional intent to define "employee" in any way other than the conventional master-servant relationship that applies to the term "employee" as used in the Copyright Act.

---

copyright for such a work. Id. While defendant's argument may have merit, the court's conclusion as to whether plaintiff is "employed" by defendant renders it moot.

[31] In fact, only two cases address the proviso. In the older of the two cases, there was no serious contention that plaintiff was not a government employee. See Herbert v. United States, 36 Fed. Cl. 299, 305 (1996) ("Mr. Herbert is a government employee. He has worked for the Veteran's [sic] Administration . . . since 1970."); Herbert v. United States, 32 Fed. Cl. 293, 296 (1994) ("Plaintiff . . . holds a full-time position at the Bronx Veterans Administration Medical Center (Bronx V.A.). Because the Bronx V.A. is an entity within the United States government, section 1498(b) applies to plaintiff . . . ."). Further, in assuming for the sake of argument that plaintiff was not an employee of the federal government, the court found that plaintiff served on a committee for the purposes of fulfilling a government contract, and thus was in the service of the government. Herbert, 36 Fed. Cl. at 306. Accordingly, the court did not need to define "employment or service of the United States." This also holds true for the most recent of the two cases. See Blueport Co., 76 Fed. Cl. at 730 ("[Plaintiff] produced the AUMD as part of his official function as an employee.").

Divining the definition intended by Congress for the term "service" is more complicated. Initially, the court notes that pursuant to rules of statutory construction, for the term "service" not to be rendered superfluous, it must mean something different than "employment." See Duncan v. Walker, 533 U.S. 167, 174 (2001); see also Herbert, 36 Fed. Cl. at 306 (treating, in dicta, "employment" and "service" as different concepts). Despite this rule of construction, plaintiff argues that the plain text of the statute shows that "service" and "employment" are equivalent terms. Supplemental Mem. ("Pl.'s Supp'l Mem.") 8-9; Pl.'s Reply Def.'s Supplemental Mem. Regarding Def.'s Consolidated Mot. Dismiss & Summ. J., & Pl.'s Cross-Mot. Summ. J. ("Pl.'s Supp'l Reply Mem.") 4-5. Specifically, plaintiff contends that "service" and "employment" must both refer to government employees because the statute prevents copyright owners from bringing a suit for copyright infringement where the copyrighted work was prepared by an individual "'in the employment or service of the United States'" and "'where the copyrighted work was prepared as a part of the official functions of the employee.'" Pl.'s Supp'l Reply Mem. 4 (quoting 28 U.S.C. § 1498(b)). Plaintiff asserts that the use of the word "employee" to modify the phrase "employment or service of the United States" shows that Congress intended to give the same meaning to "employment" and "service." Id. The court disagrees. The "official functions" language is not the only language that modifies the phrase "employment or service of the United States." The statute also prevents copyright owners from bringing a suit for copyright infringement where the copyrighted work was prepared by an individual in the "employment or service of the United States, . . . the preparation of which Government time, material, or facilities were used." 28 U.S.C. § 1498(b). This modifying language is not limited to "employees." It is thus reasonable to infer that the statute excludes suits concerning copyrighted works prepared with government resources by those in the employment of the United States or by those in the service of the United States.[32]

Because "employment" and "service" have different definitions, the court must define "service." Unlike with the term "employment," the court is unaware of any common-law definition of "service." In fact, "service" has a variety of meanings that might apply in this context, including: "[e]mployment in duties or work for another, esp[ecially] for a government," "[t]he performance of work or duties for a superior or as a servant," and "[a]n act or a variety of work done for others, esp[ecially] for pay . . . ." The American Heritage College Dictionary 1267 (4th ed. 2004); see also Pl.'s Supp'l Reply Mem. 4-5 (citing Webster's II New College Dictionary (3d ed. 2001)). These definitions indicate that "service" could refer both to paid and and unpaid work. Additionally, the legislative history of 28 U.S.C. § 1498(b) includes no definitive statements concerning which definition of "service" Congress intended.[33] Given the

---

[32] Plaintiff also refers to the use of "service" in other federal statutes. Pl.'s Supp'l Reply Mem. 6 (citing 5 U.S.C. § 5535; 15 U. S.C. § 3710a(b)(3)(C)). The court interprets these statutes as indicating that government employees serve the government, not that one who serves the government is necessarily a government employee.

[33] Defendant contends that the court should look to the legislative history of 28 U.S.C. § 1498(a), which uses the phrase "employment or service of the United States" in the context of

plain language of the statute implying distinct definitions, and the lack of convincing support to the contrary, the court finds that the most probable understanding of the term "service" in 28 U.S.C. § 1498(b) is that it encompasses any work done for the benefit of the federal government, regardless of the existence of a formal employment relationship.[34]

**b. Plaintiff Was Not Defendant's Employee Pursuant to 28 U.S.C. § 1498(b)**

As noted above, as a general rule, to determine whether an individual was "in the employment . . . of the United States" pursuant to 28 U.S.C. § 1498(b), the court must look to the general common law of agency. As summarized by the Supreme Court:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. No one of these factors is determinative.

Cmty. for Creative Non-Violence, 490 U.S. at 751-52 (citations omitted). However, these factors, which seek to differentiate employees from independent contractors, illustrate that the

---

patent infringement claims against the United States, to assist it in construing the term "service" in 28 U.S.C. § 1498(b). Def.'s Supp'l Mem. 11-14. However, the legislative history of 28 U.S.C. § 1498(a) cited by defendant does not address the definition of "service," but instead explains the purpose behind the proviso (i.e., to grant the United States an implied license to use the patented invention). Accordingly, the court finds the legislative history of 28 U.S.C. § 1498(a) inapposite.

[34] In Herbert, the court found, in dicta, that plaintiff "was in the service of the government" by virtue of his membership on a volunteer committee created by the National Academy of Sciences pursuant to a contract with the federal government. 36 Fed. Cl. at 306. As plaintiff notes, the court "applied a portion of the statute that by its terms applies only to employees, see 28 U.S.C. § 1498(b) ('where the copyrighted work was prepared as part of the official functions of the employee' (emphasis added)), to a person it assumed arguendo was not an employee." Pl.'s Supp'l Reply Mem. 8. However, the court in Herbert could have applied the same definition of plaintiff's "service" to the other half of the same clause, see 28 U.S.C. § 1498(b) ("or in preparation of which Government time, material, or facilities were used . . . ."), which is not dependant on the person creating the copyrighted work being an "employee."

general common law of agency cannot apply in this case. See also Pl.'s Mot. 11-13 (arguing that the factors enumerated in Community for Creative Non-Violence are inapplicable to the present case). But see Def.'s Opp'n 7-9 (arguing that employment by FPI is the same as employment under the Copyright Act and, thus, the Community for Creative Non-Violence factors apply).

Common-law agency is defined as follows: "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). As indicated by the definition, agency relationships are consensual in nature.[35] Id. § 1.01 cmt. c. Another feature of agency is that the agent can terminate the relationship. Id. § 3.10(1). In the present case, plaintiff is an inmate at a federal correctional institution and defendant is plaintiff's custodian. This relationship is anything but consensual, and plaintiff is powerless to end his "association" with defendant. The work status of a federal inmate is the antithesis of the status of a free individual exercising choice in the employment arena.

To the contrary, plaintiff's relationship with defendant is governed, as permitted by the Thirteenth Amendment of the United States Constitution, almost wholly by statute. See, e.g., 18 U.S.C. § 4001(a) (2000) ("No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress."); id. § 4001(b)(2) ("The Attorney General may establish and conduct industries, farms, and other activities and classify the inmates; and provide for their proper government, discipline, treatment, care, rehabilitation, and reformation."); id. § 4042(a) (providing that the Bureau of Prisons shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States" and "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States"). Further, plaintiff's purported employment by defendant flows directly from the statutes governing his incarceration. See id. §§ 4001(b)(2), 4042(a), 4121-4129. The statutes that mandate inmate work programs are the bases for the implementing regulations, see 28 C.F.R. §§ 345.10, 545.20, which in turn provide the bases for the Program Statement. It is clear that plaintiff, by virtue of these various statutes and regulations, "is legally compelled to part with his labor as part of a penological work assignment" and "is truly an involuntary servant to whom no compensation is actually owed." Henthorn v. Dep't of Navy, 29 F.3d 682, 686 (D.C. Cir. 1994). Plaintiff's relationship with

---

[35] For example, in a typical employment relationship, the parties can negotiate freely, to differing degrees, the following factors enumerated in Community for Creative Non-Violence: "the hiring party's right to control the manner and means by which the product is accomplished," "the source of the instrumentalities and tools," "the location of the work," "the duration of the relationship between the parties," "whether the hiring party has the right to assign additional projects to the hired party," "the extent of the hired party's discretion over when and how long to work," "the method of payment," "the hired party's role in hiring and paying assistants," "the provision of employee benefits," and "the tax treatment of the hired party." If the parties cannot agree on these, and other, terms, they are free not to create the relationship.

defendant is involuntary, and his work at FPI is part and parcel of both his debt to society and his ultimate rehabilitation.

Given the comprehensive nature of the statutory scheme describing the relationship between federal inmates and the federal government, the court cannot apply the common-law agency factors enumerated in Community for Creative Non-Violence in this case.[36] Statutory and regulatory provisions control the relationship between plaintiff and defendant and prevent any sort of consensual relationship contemplated by the general common law of agency. Thus, the court cannot "analyze" or "weigh" the factors because such an analysis would not comport with the realities of plaintiff's incarceration. The statutory description of the relationship between plaintiff and defendant trumps any common-law description of their "employment" relationship.

Furthermore, the absurdity of applying these factors to determine whether a federal inmate should be considered an employee within the meaning of 28 U.S.C. § 1498(b) is readily apparent. For example, applying the duration factor to federal inmates could result in a finding that inmates with the longest sentences have stronger ties to the United States than inmates serving more lenient sentences. Thus, criminals convicted of more heinous crimes would be more likely to be considered an employee under Community for Creative Non-Violence, an unfathomable result.

In sum, the court finds that the general common law of agency, as described in Community for Creative Non-Violence, should be used to define the term "employment" as it is used in 28 U.S.C. § 1498(b). However, the court also finds that the general common law of agency cannot be used to describe the relationship between plaintiff and defendant in the instant

---

[36] The court's ruling stands in contrast with one from United States District Court for the Eastern District of North Carolina. In that case, plaintiff, an inmate at a state prison, alleged that while he was working in the prison's Sign Shop, "he was approached with the idea of creating a new North Carolina license plate," and "that during non-working hours and using his own materials, he created the 'First in Flight' slogan and design that has been used on North Carolina license plates . . . ." McKenna v. Lee, 318 F. Supp. 2d 296, 298 (E.D.N.C. 2002). In considering plaintiff's copyright infringement claim, the court held that the inmate was an employee under the Community for Creative Non-Violence factors. Id. at 299-300 (indicating that plaintiff requested an assignment at the Sign Shop, plaintiff received one dollar per day for his work, that plaintiff's supervisors "had the right to control the manner and means by which the signs were made," and that making signs was the regular business of the Sign Shop). However, that court did not address the general propriety of applying the factors in the prisoner-custodian context.

case.[37] Thus, plaintiff is not "in the employment . . . of the United States" pursuant to 28 U.S.C. § 1498(b).[38]

**c. Plaintiff Was in the Service of Defendant Pursuant to 28 U.S.C. § 1498(b)**

The court's holding that the relationship between plaintiff and defendant cannot be described by the word "employment," as used in 28 U.S.C. § 1498(b), does not resolve the issue. Plaintiff still may be prevented from pursuing a copyright infringement action against defendant if plaintiff is found to be "in the . . . service of the United States." The court held above that the phrase encompasses any work done for the benefit of the federal government, regardless of the existence of a formal employment relationship. This definition is not tied to the general common law of agency and can be analyzed using the statutory framework governing the custodial relationship between federal inmates and the federal government.

Under the definition of service adopted by the court, it is clear that plaintiff was "in the . . . service of the United States" pursuant to 28 U.S.C. § 1498(b) at the time he prepared the calendar at issue. Plaintiff worked for both FPI, a corporation wholly owned by defendant, and the GSA, an agency of defendant, and supplied defendant with the output of his efforts. See, e.g., Compl. Ex. A at 1-2 (noting that plaintiff worked for FPI); id. at 4 (noting that plaintiff submitted the calendar to his FPI foreman). Further, there is no question that plaintiff used government

---

[37] Assuming, arguendo, that defendant is correct that for the purposes of 28 U.S.C. § 1498(b), the court should apply the Community for Creative Non-Violence factors to plaintiff and that under those factors, plaintiff is an "employee," Def.'s Mot. 18; Def.'s Opp'n 8-9; Def.'s Supp'l Mem. 3-4, it is clear that plaintiff cannot prevail. It is beyond dispute that the government developed the concept for the calendar, Compl. ¶ 6; App. I at 7-8; that FPI directed plaintiff to prepare the calendar images, Compl. ¶ 16; Compl. Ex. A at 3; App. I at 4, 7-8; and that plaintiff created the images on government time, at a government facility, and using government tools and equipment, App. I at 30-32, 59-61. These facts weigh so strongly in favor of defendant's position that plaintiff is an "employee," that they eclipse the remaining Community for Creative Non-Violence factors.

[38] Plaintiff also reaches the same conclusion in a different manner by making the following argument: The definition of "employee" under the Fair Labor Standards Act of 1938, ch. 676, 52 Stat. 1060 (codified as amended at 29 U.S.C. §§ 201-219 (2000)) ("FLSA"), is broader than the definition of "employee" under common-law agency principles, Pl.'s Mot. 9 (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992)); thus, because federal inmates are not employees under the FLSA, id. at 9 (citing Henthorn, 29 F.3d at 686), they cannot be employees in the narrower definition provided at common law, id. at 10-11. See also Pl.'s Supp'l Mem. 3-4 (reiterating this argument). Plaintiff makes a similar argument with respect to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (2000). Pl.'s Mot. 10 (citing Walton v. Fed. Prison Indus., No. 89-3257-R, 1991 WL 126708, at *1 (D. Kan. June 13, 1991)); Pl.'s Supp'l Mem. 4 (same).

time, material, and facilities to create the calendar. See, e.g., App. I at 30-32, 59-61 (indicating that federal inmates work in the time allotted by FPI, within FPI facilities, and using materials provided by FPI). Plaintiff's work in creating the thirteen images for the calendar was not his original idea, nor was it an option–it was imposed on him as a prison work assignment. See Compl. ¶¶ 6, 16; Compl. Ex. A at 3; App. I at 4, 7-8. At all times relevant, he was laboring at the direction of and for the federal government. Accordingly, plaintiff fits squarely within the second proviso of 28 U.S.C. § 1498(b). For this reason, the court dismisses plaintiff's complaint for lack of jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** defendant's RCFC 12(b)(1) motion to dismiss on the grounds raised by the court sua sponte, and **DISMISSES** plaintiff's amended complaint for lack of jurisdiction. Defendant's RCFC 12(b)(6) motion to dismiss, defendant's motion for summary judgment, and plaintiff's cross-motion for summary judgment are **DENIED AS MOOT**. The Clerk is directed to enter judgment in accordance with the court's decision. No costs.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge